## HAROLD THEODORE SMITH *v.* ROBERT N. PYLES, INC. ET AL.

[No. 552, September Term, 1973.]

*Decided March 15, 1974.*

The cause was argued before ORTH, C. J., and MOYLAN and GILBERT, JJ.

*Melvin Hoffman* for appellant.

*P. James Underwood* for appellees.

GILBERT, J., delivered the opinion of the Court.

Harold Theodore Smith, appellant, during the course of his employment as a carpenter for Robert N. Pyles, Inc., one of the appellees, was injured when he fell. Appellant sustained a left intertrochanteric fracture. The fracture was reduced by the introduction of a Jewett nail inserted through the femur, the femur neck and partially into the head of the femur. The medical report of the operating surgeon states that the appellant had sustained a fifteen percent permanent disability "to his left leg." A general surgeon who examined the appellant for the employer's insurance carrier, Maryland Casualty Company, the other appellee, reported that appellant had incurred a forty percent partial permanent disability "of the left hip."

The Workmen's Compensation Commission found the appellant to have suffered "a permanent partial disability under 'Other Cases' amounting to 40% industrial loss of use of his body as a result of the injury to his left hip . . . and [the appellant] has a serious disability under 'Other Cases'. . . ." The Commission thereupon ordered the payment of two hundred sixty-seven weeks of

compensation to the appellant at the rate of forty dollars ($40.00) per week, not to exceed, however, the sum of $10,680.00.

The employer and insurer appealed to the Circuit Court for Baltimore County where Judge John E. Raine, Jr., sitting non-jury, conducted three separate hearings on the matter before concluding that the Commission had erred in making an award under the "Other Cases" provision of Md. Ann. Code Art. 101, § 36 (4) (a). Judge Raine remanded the case to the Commission for a further hearing stating:

> "This court is of the opinion that there is no evidence before the Commission or before this court that there was any injury sustained by the [appellant] other than the injury to the hip portion of the left leg. The court further finds that the [appellant] sustained no industrial disability to his body as a whole."

The Commission was instructed by Judge Raine to conduct a further hearing, if required, "to the end that the said Commission determine the nature and extent of the [appellant's] disability limited to the left leg and not the body as a whole."

Aggrieved at Judge Raine's disposition of the case, appellant in his appeal to this Court contends that the trial judge erred in reversing the order of the Commission and in limiting disability to the left leg. As we see it the overriding question is what is meant in Md. Ann. Code Art. 101, § 36 (3) (b) by the noun "leg".

The section of the Workmen's Compensation Law that is known generically as the "specific injuries section", § 36 (3), provides in pertinent part:

> "(a) in case of disability partial in character but permanent in quality, the compensation shall be sixty-six and two-thirds per centum of the average weekly wages, in no case to exceed thirty-five dollars per week and not less than a minimum of twenty-five dollars per week unless the employee's

established weekly wages are less than twenty-five dollars per week at the time of the injury, in which event he shall receive compensation equal to his full wages and shall be paid to the employee for the period named in the schedule as follows:

\* \* \*

(b) . . . Leg — For the loss of a leg, three hundred weeks."

It is apparent that we must determine the proper definition of the leg of a human being as it relates to the Maryland Workmen's Compensation Law. Unfortunately the anatomical definition and the legal definition are not identical,[1] thus underscoring the statement of Judge Blackburn in *Allgood v. Blake*, L.R. 8 Ex. 160, 162 (1873) that, "[t]he meaning of words varies according to the circumstances of and concerning which they are used."

The generally accepted meaning of "leg" as found in 52A C.J.S. *Leg* 754 (1968), is:

" . . . [A] limb or member of an animal used for supporting the body and in running, climbing, and swimming; the general name for those limbs in animals which support and move the body, and, in man, the lower limbs of the body; that member of the human body upon which rests the main part of the body, and is primarily used as a support for that main portion and for locomotion.

The leg consists of three parts, that from the hip joint to the knee, from the knee joint to the ankle joint, and that portion below the ankle joint." (footnotes omitted).

The Court of Appeals of Arizona in *La Rue v. Ashton Company*, 2 Ariz. App. 101, 102, 406 P. 2d 451, 452 (1965), in

---

1. The anatomical definition found in *Stedman's Medical Dictionary* (3rd unabr. lawyer's ed. 1972) is:

"The lower extremity; specifically, the segment of the lower extremity between the knee and the ankle."

a case strikingly similar factually, quoted from the case of *Ujevich v. Inspiration Consol. Copper Co.*, 44 Ariz. 16, 33 P. 2d 599 (1934), wherein the Arizona Supreme Court said, at 18:

> "The human body has two arms and two legs, or four limbs. A complete arm, in common parlance, extends from where it connects with the shoulder blade to the hand; and a complete leg extends from where the ball [head] of the femur fits into the socket of the hip to the ankle or foot."

In *Butler Bros. v. Mabin*, 171 Md. 126, 187 A. 872 (1936), the Court of Appeals had before it a case wherein Augusta Mabin had sustained injury "to the left hip [which] consisted of a fracture of the left femur," as well as injury to the coccyx. While the Court in *Mabin, supra*, was primarily concerned with the issue of whether the injury to the coccyx was properly before the trial court and did not undertake to define what is meant by "leg", it nevertheless upheld a finding of 33 1/3% loss of use of Augusta Mabin's left leg that resulted from the fracture of the femur. Although not specifically articulating a definition of "leg" in *Mabin, supra*, the Court did implicitly hold that the injury to the hip consisting of a fracture of the femur is injury to the leg within the meaning of the Maryland Workmen's Compensation Law.

We think it unreasonable to believe that the legislature, in enacting the "specific injuries section" intended the word "leg" to have any other meaning than that usually given to it, *i.e.*, from the head of the femur to the ankle or foot. There is nothing in the statute nor the decisions of the Court of Appeals nor this Court which would lead us to conclude that the General Assembly intended to draw any arbitrary line at the patella or across the mid-point of the femur or otherwise denoting an artificial terminus of the leg. The appellant's injury was to that portion of the body included within the above definition of the leg. If the definition of "leg" is to have some other meaning it is for the legislature to so determine.

The appellant has cited us to a number of Pennsylvania cases dealing with hip injury. *See Spina v. Gahagan Const. Corp.*, 184 Pa. Super. 420, 135 A. 2d 760 (1957); *Manno v. Tri-State Engineering Co.*, 159 Pa. Super. 267, 48 A. 2d 122 (1946); *Cole v. Stewart*, 111 Pa. Super. 561, 170 A. 311 (1934); *Toth v. Pitts. Ter. Coal Corp.*, 110 Pa. Super. 163, 167 A. 438 (1933). We find them to be inapposite both factually and legally in that each of them involved proven damage to the pelvis or to other areas of the body in addition to the leg.

The appellant testified before the Commission:

"Well, I go to work during the days in the day time I work around 3 o'clock getting pains in my hip down through my knee and I have to go sit down . . . ."

In response to a question as to why the appellant found it necessary to be "up all hours of the night" the appellant said:

"On account of the aches and pains. It goes through my back, and the last X-ray I had taken, he said I was getting arthritis up through my back and legs."

There was no elaboration on the testimony concerning the pain in the appellant's back, except that at the trial before Judge Raine one of the medical witnesses said: " . . . whatever you have to the hip is going directly to the back because [of] the imbalance. . . ." The same witness also stated that the appellant's legs were "about the same length", although the injured leg *may* be one eighth inch shorter, but, "[i]t can't be shorter due to the fracture. . . ." We recognize that an injury to the anatomical parts of the body set forth in the "specific injuries section", Md. Ann. Code Art. 101, § 36 (3), could affect other parts of the body thus justifying an award under "Other Cases", Md. Ann. Code Art. 101, § 36 (4) (a).[2] This is not such a case.

The evidence in the instant case failed to establish

2. One example would be an injury to the femur that results in a two inch shortening of the leg. The imbalance would probably affect the back and possibly other areas of the body.

whether the appellant's back pain was attributable to (a) the persent injury, (b) a degenerative arthritic condition, (c) admitted prior accidents, (d) some other cause, or (e) a combination of any two or more of the foregoing.

Judge Raine found as a fact that the appellant had no industrial disability of his body, and on the record before us, we are unable to say that his finding is clearly erroneous. Md. Rule 1086. In *Dent v. Cahill*, 18 Md. App. 117, 305 A. 2d 233 (1973), we said, at 125:

> "Not only may trial courts, on appeal from decisions of the Commission, decide whether the Commission misconstrued the facts, but they may also decide how the facts should have been construed. *Greene v. Yeager*, 222 Md. 411, 160 A. 2d 605 (1960); *Bethlehem Steel Co. v. Mayo*, 168 Md. 410, 177 A. 910 (1935)."

Thus, Judge Raine was at liberty to disagree, as he did, with the findings of the Commission.

*Judgment affirmed.*
*Costs to be paid by appellant.*