HAROLD D. JEFFERS, APPELLANT, V. PAPPAS TRUCKING, INC., A CORPORATION, ET AL., APPELLEES.

253 N. W. 2d 30

Filed April 27, 1977. No. 40826.

Harry R. Meister, for appellant.

Holtorf, Hansen, Kovarik & Nuttleman, James W. Ellison, Paul L. Douglas, Attorney General, and Harold S. Salter, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

This is an appeal from an award and findings of the Nebraska Workmen's Compensation Court that the plaintiff was entitled to compensation because a job-related injury had caused a 50 percent permanent partial disability to his right leg. The plaintiff has appealed, contending that the injury was to his body as a whole rather than only to his leg, and that he is totally and permanently disabled rather than partially disabled.

On July 28, 1975, Harold D. Jeffers, the plaintiff and appellant herein, filed a petition for benefits in the Nebraska Workmen's Compensation Court. As amended, the petition alleged that the plaintiff sustained personal injury on October 31, 1974, in a motor vehicle accident arising out of and in the course of his employment by the defendant. The plaintiff prayed for the relief to which he may be entitled un-

der the provisions of the Nebraska Workmen's Compensation Law, sections 48-101 et seq., R. R. S. 1943. In their answer, defendants Pappas Trucking, Inc., and Great West Casualty Company admitted that the plaintiff was employed by Pappas Trucking, Inc., on October 31, 1974, and that he was injured on that date. The answer alleged that plaintiff's injury would not have been as great, nor would disability have resulted, had an older injury to the plaintiff not existed. On September 30, 1975, the plaintiff and defendants stipulated that the plaintiff should be allowed to amend his petition to join the State of Nebraska, Second Injury Fund, as a defendant for the reason that plaintiff had a preexisting permanent partial disability as the result of a prior accident. The Second Injury Fund denied the allegations of the amended petition.

After a hearing before a one-judge compensation court, plaintiff was, on December 10, 1975, awarded compensation. The plaintiff, however, applied for rehearing, which was granted; and on April 14, 1976, the three-judge court found that the plaintiff was entitled to benefits, that he sustained a 50 percent permanent partial disability to his right leg due to the job-related accident which occurred on October 31, 1974, and granted the plaintiff the award from which he now appeals. The court found: "That plaintiff's claim for compensation for his permanent partial disability comes under subdivision (3) of Section 48-121 of the Nebraska Workmen's Compensation Law; that disability to a member is compensable exclusively under subdivision (3) of Section 48-121 of the Nebraska Workmen's Compensation Law except under unusual or extraordinary circumstances not present in this case; that it is thus immaterial whether an industrial disability is present or not." Plaintiff contends these findings were erroneous.

The compensation court also found that plaintiff's case against the State of Nebraska, Second Injury

Fund, should be dismissed because the plaintiff had failed to prove that a preexisting permanent partial disability, as defined in section 48-128, R. R. S. 1943, existed. Plaintiff does not contest this finding on appeal, and thus no issues are presented in regard to the State of Nebraska, Second Injury Fund.

The evidence shows that the plaintiff, employed as a truck driver for the defendant, suffered an injury to his right hip in a motor vehicle accident in Nevada on October 31, 1974. He was briefly treated for his injury in Nevada, and then was treated by Dr. Wendell F. Ropp in Scottsbluff, Nebraska. Plaintiff's medical history reveals that in 1958 he injured his right hip in an automobile accident, fractured his right femur, and had pins inserted into the hip. After the accident in 1974, X-rays were taken and showed that the pins had migrated through the hip joint and were gouging the hip socket. Dr. Ropp advised the plaintiff to have a total hip replacement; and on January 14, 1975, the plaintiff had a total arthroplasty in his right hip, which is a replacement of the ball and socket of the hip joint. Dr. Ropp stated that the plaintiff's progress was better than average, and that after a 6-week convalescence, plaintiff progressed until he could walk with a minimal limp, with some pain in the soft tissues of the hip. The plaintiff's range of motion in the hip permitted him to sit comfortably, climb stairs, and bend and stoop at the waist. The plaintiff did, however, have a range of motion considerably less than normal, and had residual pain.

Dr. Ropp's opinion was that the plaintiff had a permanent partial physical impairment of 50 percent to his right lower extremity. He advised and encouraged the plaintiff to return to work activity, but stated that the plaintiff should not do work which would require lifting weights in excess of 20 to 30 pounds, standing on his feet for extended periods of time, or climbing, bending, or twisting. In sum-

mary, Dr. Ropp believed that the plaintiff should not do work which would place stress on his hip joint, pushing it beyond its range of limit.

The plaintiff was also examined by Dr. Emil J. Massa, of Denver, Colorado, who, as did Dr. Ropp, believed that the 1974 accident aggravated the injury the plaintiff suffered in 1958. Dr. Massa stated: "I would estimate his [plaintiff's] present residual permanent partial orthopedic disability to be in the neighborhood of fifty percent as measured at the level of the right hip, with thirty percent antedating the episode of October 1974 and twenty percent in all liklihood in some way related to the episode of October 1974. I do not feel that any orthopedic therapy is in order. From an activity standpoint, I feel that Mr. Jeffers should be encouraged to resume all usual activities of one in his age group, including driving a semi-rig."

Francis T. Hardin, a truck owner and driver, testified that the plaintiff had accompanied him on three trips in December 1975. On trips with two drivers, the usual procedure is for each to alternate driving in 5-hour shifts. The plaintiff's pain, however, permitted him to drive only 2 to 3 hours at a time on the first trip. The plaintiff's pain became progressively worse on each trip, despite the fact that he took pain pills. On the third trip, Hardin stated, the plaintiff limped so badly that he could hardly walk, and he could drive only 2 hours before requiring rest. Hardin believed that the plaintiff could never again drive a truck alone, and that he could not undertake long trips even if with another driver.

The plaintiff corroborated Hardin's testimony in regard to the trips made in December 1975. He stated that he had pain in his beltline and back, and that he was unable to drive a truck more than 2 hours at a time, despite the use of pain pills and pillows in the truck. The plaintiff's prior job experience consisted mainly of truck driving and unloading trucks.

He had also worked as a telephone lineman, a window washer, and filling station attendant. He stated that in his previous truck driving jobs, he was required to either load or unload the cargo, which often involved lifting objects which weighed more than 30 pounds. The plaintiff is 37 years old, and has a sixth grade education. The plaintiff stated that he knew that he would never be able to drive a truck again.

The issues raised by plaintiff in this appeal are whether the lower court erred in  (1) finding that the injury was a schedule member injury to his leg under section 48-121(3), R. S. Supp., 1976, rather than an injury to the body as a whole under section 48-121 (1); (2) failing to find he is permanently totally disabled; and  (3) finding that there were no unusual or extraordinary circumstances present such that it was necessary to determine the extent of the industrial disability suffered by him.

Section 48-121, R. S. Supp., 1976, provides for compensation for three categories of job-related disabilities. Subdivision (1) sets the amount of compensation for total disability; subdivision (2) sets the amount of compensation for disability partial in character, except in cases covered by subdivision (3); and subdivision (3) sets out "schedule" injuries to specified parts of the body with compensation established therefore. Disability under subdivisions (1) and (2) refers to loss of employability and earning capacity, and not to functional or medical loss alone. Nordahl v. Erickson, 174 Neb. 204, 116 N. W. 2d 275 (1962); Miller v. Peterson, 165 Neb. 344, 85 N. W. 2d 700 (1957). Thus losses in bodily function, so far as subdivisions (1) and (2) are concerned, are important only insofar as they relate to earning capacity and employability. Colgrove v. City of Wymore, 184 Neb. 712, 171 N. W. 2d 639 (1969).

For claims falling under subdivision (3), however, it is immaterial whether an industrial disability is

present or not. Sopher v. Nebraska Public Power Dist., 191 Neb. 402, 215 N. W. 2d 92 (1974). "We have said that it was clearly the intent of the Legislature to fix the amount of the benefits for loss of specific members under subdivision (3), section 48-121, R. S. Supp., 1963, without regard to the extent of the subsequent disability suffered with respect to the particular work or industry of the employee." Burrious v. North Platte Packing Co., 182 Neb. 122, 153 N. W. 2d 353 (1967). See, also, Runyan v. Lockwood Graders, Inc., 176 Neb. 676, 127 N. W. 2d 186 (1964). There is, however, an exception to this rule. Where "an employee has suffered a schedule injury to some particular member or members, and some unusual or extraordinary condition as to other members or any other part of the body has developed," he may be compensated under subdivision (1) or (2) of section 48-121. Mead v. Missouri Valley Grain, Inc., 178 Neb. 553, 134 N. W. 2d 243 (1965). See, also, Runyan v. Lockwood Graders, Inc., *supra;* Haler v. Gering Bean Co., 163 Neb. 748, 81 N. W. 2d 152 (1957); Burrious v. North Platte Packing Co., *supra;* Ottens v. Western Contracting Co., 139 Neb. 78, 296 N. W. 431 (1941).

The above cases indicate that if an employee suffers a schedule injury which falls under subdivision (3), of section 48-121, R. S. Supp., 1976, he is entitled only to the compensation provided for in that subdivision, unless some unusual or extraordinary condition as to other members or other parts of the body has developed. The presence or absence of industrial disability is immaterial in cases falling under subdivision (3). If the injury falls under either subdivision (1) or (2), however, a determination must be made as to the employee's loss of employability or earning capacity, and loss of bodily function is not at issue.

The plaintiff's first contention in this case is that his injury was not a schedule injury to his right leg

under subdivision (3) of section 48-121, R. S. Supp., 1976, but an injury to a part of his body which is not covered by subdivision (3). An understanding of the anatomy of the human leg and hip will be helpful at this point. Briefly summarizing, the bone in the upper leg is known as the femur. The femur has a neck and head where it joins the hip, and the head of the femur is hemispherical in shape and rests in the corresponding socket in the pelvis. The hip joint is a ball and socket joint, and through it the entire weight of the body is transmitted to the femur. The hip joint is composed of the femoral ball shaped head, and the socket in the pelvis, which is a deep cup-like cavity.

In this case, the plaintiff sustained a severe fracture of his right hip in 1958, and he received surgical treatment for that injury, which consisted of the pinning of the fractured right proximal femur. Essentially, the surgery consisted of inserting a pin or nail into the upper femur. According to Dr. Ropp, after the accident in 1974, X-rays showed that "the previous internal fixation device, the nail, with collapse of the femoral head, had migrated through the joint and was gouging into the socket. We discussed that if he continued to have significant pain and was not able to sleep, that we remove the nail and probably because of the deterioration of the joint, he should have a total hip replacement." Dr. Ropp described "total hip replacement" as "the replacement of the ball and socket surfaces of the hip joint."

In 52A C. J. S., Leg, p. 754, the leg is defined as consisting of three parts, "that from the hip joint to the knee, from the knee joint to the ankle joint, and that portion below the ankle joint." As used in workmen's compensation cases, the leg extends from where the ball of the femur fits into the socket of the hip to the ankle or foot. Ujevich v. Inspiration Consolidated Copper Co., 44 Ariz. 16, 33 P. 2d 599 (1934).

Cases from other jurisdictions have dealt with the issue of whether injuries to the hip are schedule injuries to the leg under workmen's compensation acts similar to the Nebraska act. In Texas Employers' Ins. Associates v. Sevier, 279 S. W. 2d 473 (Tex. Civ. App., 1955), a workmen's compensation case, the court stated: "An injury confined to the femur is also confined to the leg. In our opinion, however, injuries to the joint connecting the femur or the thigh to the trunk, that is the hip joint, were not intended to be included in injuries to the leg as contemplated by the statute. The femur extends to and into the hip but it stops at the joint. It does not include the joint and the court did not err in so instructing the jury." See, also, Yanez v. Skousen Constr. Co., 78 N. M. 756, 438 P. 2d 166 (1968), where the court held that a finding that an employee should be compensated for a schedule injury to the leg was erroneous where the evidence showed that the injury involved disability to the hip and limited the range of the employee's hip motion. Two Pennsylvania cases also have language to the effect that an injury to the hip joint is not a schedule injury to the leg. Yanik v. Pittsburg Terminal Coal Corp., 150 Pa. Super. 148, 27 A. 2d 564 (1942); Manno v. Tri-State Engineering Co., 159 Pa. Super. 267, 48 A. 2d 122 (1946).

Pertinent to the issue before us is a line of Arizona cases. In Miller v. Industrial Commission, 110 Ariz. 229, 517 P. 2d 91 (1973), an employee sustained a fracture of his pelvis extending into the socket of the right hip. The court stated that the "question presented is whether petitioner must be compensated for the *impairment to his hip, an unscheduled injury,* or for a scheduled injury, the loss of use of his right leg." (Emphasis supplied.) Medical evidence indicated that the employee had suffered some "thinning" of the joint space in his hip, and restriction of motion of the right leg due to the injury to the right hip. The employee had pain over the region of

the right hip extending up to the right iliac crest and down into the right groin. The court, following Ujevich v. Inspirational Consolidated Copper Co., *supra,* noted that by legal definition the leg extends from where the ball of the femur fits into the socket of the hip to the ankle or foot, and stated: ''The evidence elicited from each of the doctors is that petitioner's residual injury is to his hip and there is no pretense of any injury to the leg. The injury to the hip has resulted not only in the restriction of motion of the right leg, but disabling pain in the hip region to the petitioner.'' The court concluded: ''We hold that a scheduled injury is exclusive unless there is evidence of separate and distinct impairment to other parts of the body. As stated by 2 Larson Workmen's Compensation Law, § 58.20: 'The great majority of modern decisions agree that, if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive.' ''

The rule set forth in Miller v. Industrial Commission, *supra,* was followed in State Compensation Fund v. Industrial Commission, 25 Ariz. App. 316, 543 P. 2d 154 (1975), (disability to hip joint not a schedule injury to the leg); and Eggleston v. Industrial Commission, 24 Ariz. App. 444, 539 P. 2d 918 (1975), (injury to shoulder is not schedule injury to arm). Miller, however, did not overrule the general rule in Arizona that the ''criterion upon which it is determined whether an award should be 'scheduled' or 'unscheduled' is not the situs of the actual injury but rather the location of the residual impairment.'' State Compensation Fund v. Industrial Commission, *supra,* 25 Ariz. App. at 318, 543 P. 2d at 156. Thus if an injury occurred to the hip joint or shoulder joint, but only the leg or arm suffered residual impairment, and there was no impairment to the shoulder or hip, the rule in Arizona is that a schedule injury

to the leg or arm would result. See, State Compensation Fund v. Industrial Commission, *supra;* Eggleston v. Industrial Commission, *supra.* However, if the injury is clearly to the hip joint, and the joint itself is impaired, the injury is not a schedule injury to the leg. Jaynes v. Industrial Commission, 7 Ariz. App. 78, 436 P. 2d 172 (1968).

In their brief defendants rely heavily upon Smith v. Pyles, Inc., 20 Md. App. 478, 316 A. 2d 326 (1974). In Smith, the employee suffered an intertrochanteric fracture to his left femur. The "trochanter" is the upper part of the femur shaft, located just below the neck and the head of the femur. Thus the employee in Smith suffered a fracture to his left femur, not an injury to the hip joint itself. The fracture was treated by the insertion of a nail through the femur, the femur neck, and partially into the head of the femur. The surgery did not involve the socket of the hip joint, but only the femur. The lower court found that the employee had suffered a schedule injury to his left leg, and not an injury to the body as a whole. The appellate court in Smith upheld this finding, noting that the leg extends from the head of the femur to the ankle of the foot. Since the employee's injury was to his femur, and not to the socket in his hip, the injury was within the definition of leg, and was a schedule injury to the leg. The court also noted that there was no evidence establishing that the injury to the leg had affected other parts of the body, and therefore only compensation for a schedule injury was appropriate. The Smith case obviously turns on the fact that the employee's injury was a fractured femur, an injury which clearly is within the legal definition of an injury to the leg.

In the instant case, Dr. Ropp testified that the plaintiff received a total hip arthoplasty in his right hip. When asked what that consisted of, he stated: "With collapse of the femoral head or ball, or the

ball socket joint, secondary to injury and avascular necrosis, the gliding surfaces of the joint were destroyed. Total hip replacement, then, is the replacement of the ball and socket surfaces of the hip joint." The surgical process of total hip arthoplasty has been used in the medical profession for about 12 years. A major concern in regard to the procedure is that the artificial hip will wear out or the prosthesis will loosen, requiring replacement of the failed or loosened part. Dr. Ropp stated that the operation gave the plaintiff significant relief from pain, but that he "does have some residual pain. He has considerable less than normal range of motion. The tolerance of the artificial joint is not, in our opinion, as good as a normal hip." When asked for an example of what kind of work the plaintiff should or should not do, Dr. Ropp stated: "In looking for work which in our opinion would not stress this hip joint to an extent where it would wear out quicker or loosen quicker than necessary. We hope to avoid stresses such as weight bearing across the hip joints, high impact stresses, stresses pushing the hip beyond its range of limit." Dr. Ropp estimated that the plaintiff "has a permanent partial physical impairment to his right lower extremity of fifty percent." As noted in Miller v. Industrial Commission, *supra,* medically, doctors use the term "lower extremity" to include both the leg and the hip. 110 Ariz. at 230, 517 P. 2d at 93. In this case Dr. Massa stated that he "would estimate his [the plaintiff's] present residual permanent partial orthopedic disability to be in the neighborhood of fifty percent as measured at the level of the right hip, * * *."

It would appear that the injury to the plaintiff was not a schedule injury to the right leg, and that the lower court erred in finding that subdivision (3) of section 48-121, R. S. Supp., 1976, was controlling in this case. The plaintiff's injury was clearly to both the ball and socket of his hip joint, and as such was

not limited to the leg, as legally defined in the cases cited herein. The plaintiff received a total hip replacement, not merely a replacement of the head of the femur, or a pin in the femur, as was the case in Smith v. Pyles, Inc., *supra.* The medical testimony was that there was residual pain in the hip, as well as loss of motion in the hip joint, and the consequence of the injury was that the hip joint was weakened such that it could no longer tolerate stresses such as lifting heavy objects, climbing poles, or extended bending and standing. All the doctors who gave evidence referred to the injury as a hip injury, not as an injury to the leg.

Section 48-185, R. S. Supp., 1976, sets forth the standard of review in this case; and provides that the judgment or award may be modified, reversed, or set aside by this court when there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or when the findings of fact by the lower court do not support the order or award. The issue as to whether the plaintiff's injury was a schedule injury is largely one of law, as the facts are undisputed in regard to the nature and location of the injury. Therefore, we need not weigh the evidence and reach our own conclusion, but need only find that the lower court came to an incorrect conclusion of law based on the facts presented to it. We have repeatedly held that the compensation act is to be liberally construed so that its beneficent purposes may not be thwarted by technical refinements of interpretation. Haler v. Gering Bean Co., *supra.* As previously stated, compensation for schedule injuries under subdivision (3) of section 48-121, R. S. Supp., 1976, is limited to the amount provided for in that subdivision, but can be recovered regardless of whether industrial disability is present. Compensation for non-schedule injuries under subdivisions (1) and (2) is not as limited as that provided in subdivision (3), and depends on loss

of earning capacity or employability. In this case it would clearly be a technical refinement of interpretation to hold that an injury to the hip joint is a schedule member injury to the leg, and thus the beneficent purposes of the compensation act would be thwarted. The plaintiff should be given the opportunity to prove the industrial disability caused by his injury under subdivisions (1) and (2).

It appears that this case must be remanded to the Workmen's Compensation Court for further proceedings, as that court did not make findings of fact on the issue of *industrial* disability, having determined that only a subdivision (3) injury was present. On remand, the compensation court will be able to determine the plaintiff's loss of earning capacity or employability due to the injury, if any, and make an appropriate award under subdivisions (1) or (2) of sections 48-121, R. S. Supp., 1976.

In view of our finding, it is unnecessary to discuss plaintiff's other assignments of error.

We conclude that the judgment of the Workmen's Compensation Court must be reversed because of our finding that the plaintiff's injury was not a schedule injury to his leg, and the cause is remanded for a determination of the plaintiff's loss of earning capacity or employability under subdivisions (1) or (2) of section 48-121, R. S. Supp., 1976.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.