employer clearly falls outside of the protections afforded by these statutes. This court has repeatedly emphasized that it is the Legislature's function to declare the public policy of this state.[19] And the court long ago recognized that equity will not enjoin the commission of a crime merely because the penalty seems to be inadequate, since the relief in such case must come from the Legislature.[20] As the court said at that time, "If the punishment provided is not sufficient, recourse should be had to the [L]egislature, and not to the equity side of the courts."[21] It is the Legislature's prerogative to determine whether the extraordinary remedy of injunctive relief should be extended in the way that ConAgra seeks. Instead of deferring to the Legislature's proper functioning, the majority's decision pre-empts the Legislature's role.

I respectfully dissent.

Stephan, J., joins in this dissent.

---

[19] See, e.g., *In re Invol. Dissolution of Wiles Bros.*, 285 Neb. 920, 830 N.W.2d 474 (2013); *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012); *Bassinger v. Nebraska Heart Hosp.*, 282 Neb. 835, 806 N.W.2d 395 (2011); *City of Falls City v. Nebraska Mun. Power Pool*, 281 Neb. 230, 795 N.W.2d 256 (2011); *Bamford v. Bamford, Inc.*, 279 Neb. 259, 777 N.W.2d 573 (2010); *R & D Properties v. Altech Constr. Co.*, 279 Neb. 74, 776 N.W.2d 493 (2009); *Wilke v. Woodhouse Ford*, 278 Neb. 800, 774 N.W.2d 370 (2009); *Davis v. Davis*, 275 Neb. 944, 750 N.W.2d 696 (2008).

[20] See *Maltby, supra* note 12.

[21] *Id.* at 584, 188 N.W. at 178.

---

Charles Rodgers, appellant, v.
Nebraska State Fair, appellee.
___ N.W.2d ___

Filed May 9, 2014.    No. S-13-651.

1. **Workers' Compensation: Appeal and Error.** A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order,



judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. ____: ____. In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, a higher appellate court reviews the trial judge's findings of fact, which will not be disturbed unless clearly wrong.

3. ____: ____. Regarding questions of law, an appellate court in workers' compensation cases is obligated to make its own decisions.

4. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below.

5. ____: ____. The language of a statute is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

6. ____: ____. Absent anything to the contrary, an appellate court will give statutory language its plain and ordinary meaning.

7. ____: ____. When construing a statute, an appellate court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it.

8. ____: ____. The rules of statutory interpretation require an appellate court to give effect to the entire language of a statute, and to reconcile different provisions of the statutes so they are consistent, harmonious, and sensible.

9. **Workers' Compensation.** The Nebraska Workers' Compensation Act should be construed to accomplish its beneficent purposes.

Appeal from the Workers' Compensation Court: Michael K. High, Judge. Reversed and remanded.

David M. Handley, of Dyer Law, P.C., L.L.O., for appellant.

Brynne E. Holsten, of Engles, Ketcham, Olson & Keith, P.C., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Charles Rodgers, the appellant, suffered injuries to both of his knees in a work-related accident on September 7, 2009. In its award filed July 3, 2013, the Workers' Compensation Court concluded that in order to perform a loss of earning capacity calculation under the third paragraph of Neb. Rev. Stat. § 48-121(3) (Reissue 2010), there must be expert opinion of permanent physical restrictions as to each injured scheduled

member. Despite Rodgers' request, the court declined to consider a potential loss of earning capacity award in the absence of such proof as to the left knee and therefore limited its award to scheduled member benefits. Rodgers appeals. We conclude that the compensation court erred as a matter of law when it concluded that the absence of expert opinion of permanent physical restrictions as to the left knee precluded a loss of earning capacity calculation under the third paragraph of § 48-121(3). We reverse, and remand the cause for consideration consistent with our opinion.

## STATEMENT OF FACTS

This case stems from a work-related accident that occurred on September 7, 2009, in which Rodgers suffered injuries to both of his knees. The parties stipulated to certain facts, described and adopted by the court as follows:

1. On September 7, 2009, plaintiff, . . . Rodgers, injured his knees arising out of and in the scope and course of his employment with the defendant, Nebraska State Fair.

2. Timely notice of the injury was given to the employer.

3. Venue is proper in the Nebraska Workers' Compensation Court.

4. At the time of [Rodgers'] injury, [Rodgers] was earning an average weekly wage of $480.36.

5. [Rodgers] has reached maximum medical improvement for his left knee on August 5, 2010, and was assigned a 2 percent impairment to his left lower extremity by Dr. Lawson.

6. [Rodgers] has reached maximum medical improvement for his right knee on October 25, 2011, as indicated by both Dr. Donovan and Dr. O'Neil and was assigned a 40 percent impairment to his right lower extremity by Dr. O'Neil.

7. The parties agree that all related medical and hospital expenses previously incurred by [Rodgers] have been or are in the process of being paid by the [Nebraska State Fair] pursuant to the Fee Schedule.

8. The parties agree that all future related medical [expenses] as defined by Neb. Rev. Stat. § 48-120 for

[Rodgers'] right knee will be paid by the [Nebraska State Fair] pursuant to the Fee Schedule.

9. The parties agree that there are no penalties due.

Dr. John C. Yeakley initially treated Rodgers for his knee injuries. Dr. Yeakley performed surgery on the left knee on May 3, 2010. After Dr. Yeakley retired, Dr. Keith W. Lawson assumed Rodgers' care. In Dr. Lawson's report dated December 12, 2011, he stated that Rodgers reached maximum medical improvement for his left knee on August 5, 2010. Dr. Lawson opined that Rodgers had sustained a 2-percent permanent partial impairment to his left knee but assigned no permanent physical restrictions to the left knee.

Dr. Yeakley performed surgery on the right knee on February 1, 2010. Dr. Yeakley performed a second surgery on the right knee on November 29. Following the second surgery on the right knee, Rodgers was diagnosed with chronic regional pain syndrome in the right knee.

At the request of the Nebraska State Fair, Rodgers was examined by Dr. Michael T. O'Neil for an independent medical evaluation. According to Dr. O'Neil's September 19, 2012, report, Rodgers had reached maximum medical improvement for his right knee on October 25, 2011. Dr. O'Neil assigned a 40-percent permanent partial impairment rating for the right knee. As to permanent physical restrictions, Dr. O'Neil noted "no prolonged walking or standing as well as [no] climbing, squatting and kneeling."

On January 7, 2013, the vocational counselor agreed upon by the parties provided a loss of earning capacity analysis. In his report, the counselor stated that he had interviewed Rodgers and reviewed Rodgers' medical records regarding his knee injuries. The counselor stated: "I have been asked to determine . . . Rodgers' loss of earning capacity per the parties [sic] e-mail . . . that states 'the entitlement to [loss of earning capacity] will be a matter of fact determined by the trial judge.'" The vocational counselor determined that Rodgers' loss of earning capacity "would be approximately 65%."

Rodgers filed his petition, including a request for loss of earning compensation in the Workers' Compensation Court

on October 9, 2012. The Nebraska State Fair filed its answer on November 21. A hearing was held before the Workers' Compensation Court on June 25, 2013. Rodgers offered and the court received five exhibits, and the Nebraska State Fair offered and the court received six exhibits. The exhibits consisted primarily of Rodgers' medical expenses, records, and reports. Rodgers was the only witness.

On July 3, 2013, the Workers' Compensation Court filed an award in which it concluded that it was unable to perform a loss of earning power calculation under the third paragraph of § 48-121(3) in the absence of expert proof of permanent restrictions relating to the left knee and therefore limited its consideration of the evidence and made an award based on scheduled member benefits. Referring to the provisions in the third paragraph of § 48-121(3), the court stated that "the sole issue in this case is whether or not [the third paragraph] from Neb. Rev. Stat. § 48-121[(3)] applies so [Rodgers] is entitled to a loss of earning power rather than the payment schedule for scheduled member disability."

The statutory language to which the court referred and which is central to this appeal is found in the third paragraph of § 48-121(3). This paragraph was added in 2007, and provides in its entirety:

> If, in the compensation court's discretion, compensation benefits payable for a loss or loss of use of more than one member or parts of more than one member set forth in this subdivision, resulting from the same accident or illness, do not adequately compensate the employee for such loss or loss of use and such loss or loss of use results in at least a thirty percent loss of earning capacity, the compensation court shall, upon request of the employee, determine the employee's loss of earning capacity consistent with the process for such determination under subdivision (1) or (2) of this section, and in such a case the employee shall not be entitled to compensation under this subdivision.

We have previously considered this amendatory language and noted that

[o]ther than the amendment at issue, the portions of § 48-121(3) then and now provide for compensation based on designated amounts for scheduled member injuries, but no loss of earning capacity [except as may result from the second paragraph of § 48-121(3)]. The amendment provides for the loss of earning capacity at the court's discretion where there is a loss or loss of use of more than one member which results in at least a 30-percent loss of earning capacity.

*Smith v. Mark Chrisman Trucking*, 285 Neb. 826, 830, 829 N.W.2d 717, 720 (2013).

In its award, the Workers' Compensation Court endeavored to interpret the new language of § 48-121(3). The court focused on the introductory sentence of the new third paragraph, which provides that the option to consider an award of loss of earning capacity depends on the availability of compensation benefits payable "for a loss or loss of use of more than one member or parts of more than one member." The court concluded that "there must be at least a functional loss of use in the form of permanent physical restrictions for each scheduled member" in order to perform a loss of earning capacity calculation. The court stated that "'a loss' clearly relates to a physical removal of a part of the scheduled members, that is leg, arm, or finger, etc." The court continued that the portion of the phrase in the new third paragraph of § 48-121(3) that provides "loss of use of more than one member"

means that there must [be] a permanent partial disability in the form of permanent restrictions relating to the use of the particular scheduled member before the rest of the calculations set forth in the above quoted paragraph [of § 48-121(3)] can possibly take place and result in payment for a loss of earning power.

The court found that Rodgers had sustained a permanent partial impairment to his right knee of 40 percent and a permanent partial impairment to his left knee of 2 percent. No party challenges these findings on appeal. Notwithstanding these findings of permanent impairment, the court nevertheless determined that because no permanent physical restrictions

were specifically assigned by an expert for Rodgers' left knee, the court could not calculate loss of earning capacity benefits authorized under § 48-121(3), and that Rodgers was thus limited to scheduled member compensation. The court found that the Nebraska State Fair had paid Rodgers all the benefits to which he was entitled, and ordered that the Nebraska State Fair pay for all reasonable and necessary future medical costs associated with Rodgers' right knee. Rodgers appeals.

## ASSIGNMENT OF ERROR

Rodgers claims on appeal that the Workers' Compensation Court erred when it concluded that the third paragraph of § 48-121(3) requires that there must be specific expert evidence of permanent physical restrictions as to each scheduled member in order to calculate an award of a loss of earning capacity under this statute.

## STANDARDS OF REVIEW

[1-3] A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Visoso v. Cargill Meat Solutions*, 287 Neb. 439, 843 N.W.2d 597 (2014). In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, a higher appellate court reviews the trial judge's findings of fact, which will not be disturbed unless clearly wrong. *Rader v. Speer Auto*, 287 Neb. 116, 841 N.W.2d 383 (2013). Regarding questions of law, an appellate court in workers' compensation cases is obligated to make its own decisions. *Id*.

[4] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. *Hess v. State*, 287 Neb. 559, 843 N.W.2d 648 (2014).

## ANALYSIS

At issue in this case is the interpretation of the third paragraph of § 48-121(3), which was added to the statute by 2007 Neb. Laws, L.B. 588. As stated above, this paragraph provides:

> If, in the compensation court's discretion, compensation benefits payable for a loss or loss of use of more than one member or parts of more than one member set forth in this subdivision, resulting from the same accident or illness, do not adequately compensate the employee for such loss or loss of use and such loss or loss of use results in at least a thirty percent loss of earning capacity, the compensation court shall, upon request of the employee, determine the employee's loss of earning capacity consistent with the process for such determination under subdivision (1) or (2) of this section, and in such a case the employee shall not be entitled to compensation under this subdivision.

This third paragraph was first introduced as 2007 Neb. Laws, L.B. 77, which was later inserted into L.B. 588. In *Smith v. Mark Chrisman Trucking*, 285 Neb. 826, 829, 829 N.W.2d 717, 720 (2013), we stated that this amendment created a new remedy and set forth the Introducer's Statement of Intent for L.B. 77, which provided:

> "LB 77 relates to the Nebraska Workers' Compensation Act and would change disability compensation provisions. Under current law, if a worker sustains an injury to multiple members, he or she is limited to the compensation provided in the schedule contained in section 48-121 of the Nebraska Workers' Compensation Act. LB 77 would give to the Nebraska Workers' Compensation Court the discretion to award a loss of earning capacity in an appropriate case involving loss of use of multiple members."

In *Smith*, we commented that

> a worker can now receive compensation for the loss of earning capacity if, in the court's discretion, compensation as set forth in § 48-121(3) would not adequately compensate the worker and where there is a loss or loss of use of more than one member resulting from the same

accident which results in at least a 30-percent loss of
earning capacity.

285 Neb. at 834, 829 N.W.2d at 723.

In the instant case, we examine the new language more
closely and conclude that the court erred as a matter of law
when it limited the application of the new remedy to only
those cases in which an expert opinion existed regarding the
permanent physical restrictions as to each injured member, an
element not found in the statutory language and not essential to
the performance of a loss of earning capacity calculation. We
thus find merit to Rodgers' assignment of error claiming the
Workers' Compensation Court erred in its interpretation, and
we reverse, and remand.

The introductory language of § 48-121 provides that this
statute contains a "schedule of compensation" for injuries.
Although the language of § 48-121 has changed over time, the
following partial summary of § 48-121 from *Jeffers v. Pappas
Trucking, Inc.*, 198 Neb. 379, 253 N.W.2d 30 (1977), is still
appropriate. In *Jeffers*, we stated:

> Section 48-121 . . . provides for compensation for three
> categories of job-related disabilities. Subdivision (1) sets
> the amount of compensation for total disability; subdivi-
> sion (2) sets the amount of compensation for disability
> partial in character, except in cases covered by subdivi-
> sion (3); and subdivision (3) sets out "schedule" injuries
> to specified parts of the body with compensation estab-
> lished therefore [sic].

198 Neb. at 384, 253 N.W.2d at 33. Although we recognize
that the provisions of § 48-121 have been revised from time
to time, historically, our cases as described below have noted
that loss of earning capacity calculations were relevant to
determining an award under § 48-121(1) and (2) and, since
2007, such calculation is relevant to a potential award under
§ 48-121(3).

Turning to the current statute, the first sentence of the sec-
ond paragraph of § 48-121(3) provides:

> In any case in which there is a loss or loss of use
> of more than one member or parts of more than one
> member set forth in this subdivision, but not amounting

to total and permanent disability, compensation benefits shall be paid for the loss or loss of use of each such member or part thereof, with the periods of benefits to run consecutively.

The last sentence of the second paragraph of § 48-121(3) states that where there is "permanent partial loss of the use or function of any of the members mentioned in" § 48-121(3), the employee shall receive compensation benefits in the proportionate amount based on the schedule set forth in the first paragraph of § 48-121(3). The second paragraph of § 48-121(3) thus provides for compensation where there is more than one member involved. Rodgers was awarded benefits under this second paragraph of § 48-121(3). The third paragraph of § 48-121(3), as previously noted, provides a discretionary remedy consisting of a loss of earning capacity award in lieu of scheduled member compensation where two or more members are involved and there is a 30-percent loss of earning capacity. Rodgers was denied benefits under this third paragraph of § 48-121(3).

[5-8] With the third paragraph of § 48-121(3) in mind, we turn to our familiar canons of statutory construction. The language of a statute is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Robertson v. Jacobs Cattle Co.*, 285 Neb. 859, 830 N.W.2d 191 (2013). In other words, absent anything to the contrary, an appellate court will give statutory language its plain and ordinary meaning. *Hess v. State*, 287 Neb. 559, 843 N.W.2d 648 (2014). And when construing a statute, an appellate court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Id.* The rules of statutory interpretation require an appellate court to give effect to the entire language of a statute, and to reconcile different provisions of the statutes so they are consistent, harmonious, and sensible. *ML Manager v. Jensen*, 287 Neb. 171, 842 N.W.2d 566 (2014).

In its order, the court found that Rodgers was entitled to scheduled member compensation under § 48-121(3) but not

entitled to consideration for a loss of earning capacity benefit under § 48-121(3). By its ruling and award, the court implicitly found that Rodgers suffered a "loss of use" as to each the left knee and the right knee for purposes of the award under the second paragraph of § 48-121(3) but explicitly found that he did not suffer a "loss of use" of the left knee for purposes of the third paragraph of § 48-121(3). That is, the court found "loss of use" of the left knee for the second paragraph but not "loss of use" of the left knee for the third paragraph.

In its award, the court stated that in order to perform a loss of earning power calculation "there must be at least a functional loss of use in the form of permanent physical restrictions for each scheduled member." That is, the court concluded that under the statute, an expert opinion regarding permanent loss of bodily function as to each scheduled member was necessary before a loss of earning power calculation could be performed. Rodgers contends on appeal that "[t]he appropriate place to scrutinize restrictions . . . under [the third paragraph of] § 48-121(3) is at the point of the loss of earnings capacity analysis" and that the Workers' Compensation Court erred when it required the existence of expert proof of loss of bodily function qua permanent physical restrictions before the court could perform a loss of earning capacity analysis. Brief for appellant at 13. We agree with Rodgers' contention.

Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. *Hess v. State, supra*. We conclude as a matter of law that the compensation court incorrectly interpreted the third paragraph of § 48-121(3). As explained below, the court's interpretation of the third paragraph of § 48-121(3) by which it added an additional element, i.e., proof of functional loss in the form of permanent physical restrictions as to each member notwithstanding undisputed evidence of permanent impairment, in order to calculate a loss of earning power is not supported by the language of the statute, logic, or our jurisprudence.

The plain language of the third paragraph of § 48-121(3) guides our resolution of this case. First, the plain language

of the third paragraph of § 48-121(3) *does not* require the loss of bodily function proof that the court insists on. Second, the language *does require* that, if the threshold requirements are met, including a request by the employee for loss of earning capacity compensation, and in the compensation court's discretion the scheduled member benefits resulting from the same accident or illness do not adequately compensate the employee, then the compensation court shall "determine the employee's loss of earning capacity consistent with the process for such determination under subdivision (1) or (2) of this section."

In considering the court's additional element, i.e., requiring expert proof of permanent physical restrictions as to each member, we conclude that there is simply nothing in the plain language of the statute that provides for or warrants adding this extra requirement. To the extent the court believes this additional requirement is necessary to show loss of use in the third paragraph of § 48-121(3), we note that the court did not similarly encumber its finding of loss of use in the second paragraph. It is not sensible to read "loss of use" in these adjoining paragraphs as requiring different sets of proof. Further, the court's award, which is not challenged by the Nebraska State Fair, was supported by an undisputed permanent impairment rating as to each knee. We have often noted the necessity, in the alternative, of proof of impairment or restrictions at the loss of earning analysis stage, but we have not been directed to authority which requires proof of both impairment and restrictions before undertaking a loss of earning capacity analysis. See, e.g., *Green v. Drivers Mgmt., Inc.*, 263 Neb. 197, 206, 639 N.W.2d 94, 103 (2002) (providing for alternative proofs and stating in context of vocational rehabilitation benefits that "[w]ithout impairment *or* restrictions, there can be no disability or labor market access loss").

In considering the court's ruling which in effect provides that it cannot perform a loss of earning capacity calculation without expert loss of bodily function proof as to each member, such conclusion is not consistent with the statute's directive that a loss of earning capacity calculation be performed "consistent with the process for such determination under

subdivision (1) or (2) [of § 48-121],'' because the "process" for such determination decidedly does not require such proof. Our case law confirms this.

Acknowledging as we have that § 48-121 has been revised from time to time, we have commented on the "process" and stated that "[a]n employee's disability as a basis for compensation under § 48-121(1) and (2) is determined by the employee's diminution of employability or impairment of earning power or earning capacity, and is not necessarily determined by a physician's evaluation and assessment of the employee's loss of bodily function." *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 470, 461 N.W.2d 565, 573 (1990). Elsewhere, we have stated that "[i]f the injury falls under either subdivision (1) or (2) [of § 48-121], a determination must be made as to the employee's loss of employability or earning capacity, and loss of bodily function is not at issue." *Jeffers v. Pappas Trucking, Inc.*, 198 Neb. 379, 385, 253 N.W.2d 30, 34 (1977). See, similarly, *Kleiva v. Paradise Landscapes*, 227 Neb. 80, 416 N.W.2d 21 (1987).

We have frequently observed that earning power is not synonymous with either wages or loss of physical function. E.g., *Thom v. Lutheran Medical Center*, 226 Neb. 737, 414 N.W.2d 810 (1987). Thus, although loss of physical function may affect a worker's ability to procure and hold employment, contrary to the court's conclusion in this case, we cannot say that the absence of expert proof of functional loss prevents the performance of a loss of earning capacity calculation. Indeed, to the contrary, we have stated in a variety of settings that degree of disability may be determined without expert evidence and that the court may rely on a claimant's testimony. E.g., *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002). The compensation court's interpretation is not consistent with the established process for consideration of loss of earning capacity under § 48-121(1) and (2) and is therefore not a proper interpretation of the directive in the third paragraph of § 48-121(3).

With the addition of the current third paragraph of § 48-121(3), the Legislature clearly intended to extend the opportunity to receive benefits for loss of earning capacity

to workers with multiple member injuries resulting from the same accident or illness and for whom there is evidence of a 30-percent loss of earning capacity. In this case, the record undisputedly shows that Rodgers had been assigned a 2-percent permanent partial impairment rating for his left knee and a 40-percent permanent partial impairment rating for his right knee, Rodgers' injuries resulted from the same accident, the vocational counselor determined that Rodgers' loss of earning capacity "would be approximately 65%," and Rodgers requested loss of earning compensation.

[9] As a general rule, the Nebraska Workers' Compensation Act should be construed to accomplish its beneficent purposes. *Visoso v. Cargill Meat Solutions*, 285 Neb. 272, 826 N.W.2d 845 (2013). Reading an additional requirement of expert proof of permanent restrictions for each injured member into the statute, as the compensation court has done, impedes accomplishing the extension of the potential for workers to receive loss of earning power benefits and is not consistent with the "process" for determining loss of earning capacity under § 48-121(1) or (2).

We conclude that the third paragraph of § 48-121(3) does not require expert proof of permanent physical restrictions assigned to each injured member in order to perform the loss of earning capacity assessment thereunder, and the compensation court's conclusion to the contrary was error.

## CONCLUSION

The compensation court erred as a matter of law when it concluded that there must be expert opinion of permanent physical restrictions as to each injured member in order to perform a loss of earning capacity assessment under the third paragraph of § 48-121(3) and declined to exercise its discretion on this basis. We therefore reverse, and remand the cause for a decision consistent with this opinion.

REVERSED AND REMANDED.