[12] As discussed above, Hardrick's affidavit was properly excluded from evidence because it lacked the foundation to qualify him as an expert and failed to demonstrate his competence, both objections raised by Edwards at the hearing. Having found that the affidavit was properly excluded, we decline to discuss whether the court made a sua sponte objection with regard to the affidavit's relevance. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Hill v. Hill*, 20 Neb. App. 528, 827 N.W.2d 304 (2013).

## CONCLUSION

Upon our review of the evidence, we find that there are no genuine issues of material fact and that Edwards was entitled to judgment as a matter of law.

Affirmed.

---

William Burnett, appellant and cross-appellee,
v. Tyson Fresh Meats, Inc., appellee
and cross-appellant.

___ N.W.2d ___

Filed April 8, 2014.     No. A-13-278.

1. **Workers' Compensation: Appeal and Error.** A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or the award.

2. ____: ____. On appellate review of a workers' compensation award, the trial judge's factual findings have the effect of a jury verdict and will not be disturbed unless clearly wrong.

3. **Workers' Compensation.** The statutory scheme found in Neb. Rev. Stat. § 48-121 (Reissue 2010) compensates impairments of the body as a whole in terms of loss of earning power or capacity, but compensates impairments of scheduled members on the basis of loss of physical function.

4. ____. The test for determining whether a disability is to a scheduled member or to the body as a whole is the location of the residual impairment, not the situs of the injury.

5. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.
6. **Trial: Expert Witnesses.** When there is a conflict in testimony of expert witnesses, the trial court is entitled to accept the opinion of one expert over another.
7. **Workers' Compensation: Expert Witnesses.** As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony.
8. **Workers' Compensation.** The determination of causation is, ordinarily, a matter for the trier of fact.
9. **Workers' Compensation: Evidence: Appeal and Error.** In testing the sufficiency of the evidence to support the findings of fact made by the Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party.

Appeal from the Workers' Compensation Court: John R. Hoffert, Judge. Affirmed.

Holly Theresa Morris, of Shasteen & Morris, P.C., L.L.O., for appellant.

Joseph F. Bachmann, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., for appellee.

Inbody, Chief Judge, and Pirtle and Riedmann, Judges.

Inbody, Chief Judge.

## INTRODUCTION

William Burnett appeals the order of the Nebraska Workers' Compensation Court awarding him temporary total disability benefits and outstanding medical and mileage expenses, but denying him permanent partial disability benefits. The appellee, Tyson Fresh Meats, Inc. (Tyson), has also cross-appealed the trial court's reliance upon certain medical expert testimony and determination regarding causation. For the following reasons, we affirm the order of the trial court in its entirety.

## STATEMENT OF FACTS

Burnett, who was 44 years old at the time of the trial, began working for Tyson in February 2010 as a "chucks operator," which involved cutting meat with a "chuck saw." In the 1980's, Burnett underwent hip surgery, but had not experienced any

pain, impairment, or work restrictions since that time. On June 11, 2010, Burnett was leaving the processing floor where he worked to go on break and slipped down a small set of stairs. Burnett explained that he slipped on debris from cow "scraps" in the doorway, which caused him to put his weight all on his left side. Burnett immediately felt pain in his hip, and he reported it to the Tyson safety representative.

Burnett was seen by a doctor through "Tyson's healthcare" and was referred to Dr. Michael L. McCarty. Burnett testified that Dr. McCarty explained that the pain he was having was from slipping and falling and not because he needed a hip replacement. Dr. McCarty's June 22, 2010, report indicates that "[Burnett's] pain is from the degenerative arthritis of the hip with the acute trauma caused from the fall." The report further indicates that "there is no urgency or emergency but long term I think the only thing that is really going to help his hip is going to be a total hip replacement." Dr. McCarty's followup report on July 6 continues to indicate that Dr. McCarty wanted approval from Tyson's insurance carrier for a total hip replacement and that there were "not any other good alternatives when [Burnett] has such advanced degenerative arthritis." Thereafter, in a letter seeking clarification of Dr. McCarty's diagnosis from Tyson's insurance carrier, Dr. McCarty indicated that the "findings of advanced degenerative joint disease" were not caused by the June 11 accident and were personal in nature.

Thereafter, in December 2010, Burnett sought out an evaluation by Dr. Brent Adamson for a second opinion, because although he was told by the Tyson doctors that he was not injured, his pain continued at the same level of intensity. Dr. Adamson diagnosed Burnett with severe degenerative arthritis of the left hip and recommended a "left total hip arthroplasty."

Burnett underwent the recommended surgery on December 23, 2010. Burnett testified that he paid for the surgery and that some expenses were covered by health insurance. Burnett missed work from December 22, 2010, through March 1, 2011. Burnett returned to work on March 1, and he testified that he has had no problems or pain since that time. On June 7,

2012, Dr. Adamson opined that Burnett suffered a strain and contusion of his left hip when he slipped and fell on June 11, 2010. Dr. Adamson further opined that "the degenerative arthritis that he sustained was pre-existing his injury and that the x-rays did not look any different before the injury than they did after the injury." Dr. Adamson opined that Burnett reached maximum medical improvement, that there were no permanent work restrictions, and that he sustained a 23-percent impairment to his left hip.

In October 2012, Dr. D.M. Gammel was asked to review the medical reports and documentation regarding Burnett's hip pain related to the accident. Dr. Gammel opined that the June 11, 2010, accident caused a permanent aggravation of his pre-existing left hip degenerative joint disease. Dr. Gammel further opined that Burnett had no work restrictions and had reached maximum medical improvement, and he concurred with the 23-percent permanent impairment, but identified the impairment to Burnett's left lower extremity. Dr. Gammel further explained that the December 23 surgery was reasonable and necessary as a result of the June 11 accident, because there had not been any abrupt clear change in Burnett's condition until that time.

Prior to trial, the parties stipulated that Burnett sustained an injury in an accident arising out of and in the course and scope of his employment with Tyson, that notice and venue were proper, that the average weekly wage was not in dispute, that Tyson had paid benefits, and that the following were not at issue: attorney fees, interest, penalties, vocational rehabilitation, and medical expense fee scheduling.

At trial, Burnett testified in his own behalf as indicated above and numerous exhibits were received into evidence, with objections made as to only exhibit 4, a letter from a chiropractic office, and exhibit 9, medical bills. In the award, the trial court found that it had been given two competing opinions as to the nature and extent of Burnett's injury. The court found that Dr. Gammel opined that the accident caused a permanent aggravation of a preexisting left hip degenerative joint disease and that the surgery performed by Dr. Adamson on December 23, 2012, was reasonable and necessary as a

result of the June 11, 2010, accident. On the other hand, the trial court reviewed the opinion of Dr. Adamson which indicated that he did not agree with Dr. Gammel's conclusions and that Burnett's left hip pain was the natural progression of degenerative osteoarthritis and was not a result of the incident at work.

The trial court found Dr. Gammel's opinion more persuasive and found that "the fact that [Burnett] may well have needed the subject surgery *eventually* does not serve to absolve [Tyson] of liability." The trial court found that if it were to adopt the opinion of Dr. Adamson, it would in essence be resurrecting "the enhanced degree or burden of proof specifically rejected by the Nebraska Supreme Court," and that Dr. Adamson's "concept of *inevitability*" detracted from his persuasive value. (Emphasis in original.)

The court found that Burnett was entitled to temporary disability benefits from the date of his surgery, December 23, 2010, until his release to return to work on March 1, 2011, and that based upon the stipulated average weekly wage, he was entitled to $331.92 for "each of the 9.8571 weeks of temporary total disability." The trial court found that due to the nature of the injury and surgery, the injury qualified as a whole body injury and not as a scheduled member injury, but that there was no evidence of any permanent impairments or work restrictions. The court denied any award of permanent partial disability benefits. The court further denied any award of future medical benefits and found that Tyson was entitled to a credit for disability payments paid. It is from this order that Burnett has appealed.

## ASSIGNMENTS OF ERROR

Burnett assigns, rephrased and consolidated, that the trial court erred by failing to apply the appropriate legal test for determining whether a disability is to a scheduled member or the body as a whole and for not awarding him permanent disability benefits for a scheduled member disability. Tyson has also filed a cross-appeal assigning that the court erred in adopting Dr. Gammel's opinion and by finding that the June 11,

2010, accident caused an aggravation resulting in a compensable injury.

## STANDARD OF REVIEW

[1] A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or the award. *Visoso v. Cargill Meat Solutions*, 285 Neb. 272, 826 N.W.2d 845 (2013).

[2] On appellate review of a workers' compensation award, the trial judge's factual findings have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id*.

## ANALYSIS

*Scheduled Member or Body as Whole*.

Burnett argues that the trial court erred in failing to apply the appropriate legal test for determining whether a disability is to a scheduled member or the body as a whole. Burnett argues that the appropriate test for determining whether a disability is to a scheduled member or to the body as a whole is the location of the residual impairment and not the situs of the injury, pursuant to *Ideen v. American Signature Graphics*, 257 Neb. 82, 595 N.W.2d 233 (1999). Burnett contends that the trial court erred in relying upon *Jeffers v. Pappas Trucking, Inc.*, 198 Neb. 379, 253 N.W.2d 30 (1977).

[3,4] The statutory scheme found in Neb. Rev. Stat. § 48-121 (Reissue 2010) compensates impairments of the body as a whole in terms of loss of earning power or capacity, but compensates impairments of scheduled members on the basis of loss of physical function. *Nordby v. Gould, Inc.*, 213 Neb. 372, 329 N.W.2d 118 (1983). The test for determining whether a disability is to a scheduled member or to the body as a whole is the location of the residual impairment, not the situs of the injury. *Ideen v. American Signature Graphics, supra*.

The question that Burnett presents is whether his impairment is to his hip or to his body as a whole. In the case of *Jeffers v. Pappas Trucking, Inc., supra*, as relied upon by the trial court in the case at hand, the question presented was whether a hip injury resulted in a leg disability or body as a whole disability. The employee suffered an injury to his right hip as a result of a work-related motor vehicle accident that aggravated a preexisting hip injury which ultimately resulted in a total arthroplasty (a replacement of the ball and socket of the hip joint). The employee attempted to return to work; however, because of the severe pain in his beltline and back, the employee was unable to withstand the long periods of sitting required in his job. The trial court found that the employee suffered a scheduled member injury. See *Jeffers v. Pappas Trucking, Inc., supra*.

On appeal, the employee in *Jeffers v. Pappas Trucking, Inc.* argued that he had suffered a whole body injury rather than an injury to a scheduled member. The Nebraska Supreme Court determined that the test for determining whether the injury was a scheduled member injury or injury to the body as a whole was not the situs of the injury, but, rather, the location of the residual impairment. *Id*. The Nebraska Supreme Court found that the employee's injury was to both the ball and the socket of his hip joint—requiring a total hip replacement, and not merely a replacement of the head of the femur—and that since the disabling pain was at his beltline and back, areas other than the site of his hip or leg injury, it compelled a whole body award rather than a specific member award. See *Jeffers v. Pappas Trucking, Inc., supra*. In finding that the employee's injury was not a scheduled injury to the leg, the Supreme Court explained:

> The issue as to whether the plaintiff's injury was a schedule injury is largely one of law, as the facts are undisputed in regard to the nature and location of the injury. Therefore, we need not weigh the evidence and reach our own conclusion, but need only find that the lower court came to an incorrect conclusion of law based on the facts presented to it. We have repeatedly held that the compensation act is to be liberally construed so that

its beneficent purposes may not be thwarted by technical refinements of interpretation. [*Haler v. Gering Bean Co*., 163 Neb. 748, 81 N.W.2d 152 (1957)]. As previously stated, compensation for schedule injuries under subdivision (3) of section 48-121, R. S. Supp., 1976, is limited to the amount provided for in that subdivision, but can be recovered regardless of whether industrial disability is present. Compensation for non-schedule injuries under subdivisions (1) and (2) is not as limited as that provided in subdivision (3), and depends on loss of earning capacity or employability. In this case it would clearly be a technical refinement of interpretation to hold that an injury to the hip joint is a schedule member injury to the leg, and thus the beneficent purposes of the compensation act would be thwarted. The plaintiff should be given the opportunity to prove the industrial disability caused by his injury under subdivisions (1) and (2).

*Jeffers v. Pappas Trucking, Inc*., 198 Neb. 379, 391-92, 253 N.W.2d 30, 36-37 (1977).

In *Ideen v. American Signature Graphics*, 257 Neb. 82, 595 N.W.2d 233 (1999), the claimant sought review of the trial court's determination that the claimant did not suffer a whole body injury as to the injury to her right arm. The claimant's treating physician assigned her a 12-percent permanent partial impairment to the upper right arm. *Id*. Another physician agreed with the 12-percent impairment to the upper right arm, in addition to a 5-percent impairment to her spine, and opined that the claimant had a 12-percent impairment to her person as a whole. *Id*. The trial court found the first physician's opinion to be the most persuasive and found that the disability was as to the arm only. *Id*. The claimant argued that the Nebraska Supreme Court abandoned the residual impairment test because the application of the test gave different results depending on whether the injury was to the upper or lower extremity. *Id*.

The Nebraska Supreme Court reiterated that the residual impairment test was the appropriate test for determining disability. See *id*. Specifically, as to the facts of the case, the Supreme Court found that the residual impairment test did

not distinguish between leg and arm injuries and an injury to the arm could result in an impairment to the body as a whole, but that the specific evidence presented to the trial court in the claimant's case was conflicting. *Id*. The compensation court is granted great discretion in determining factual issues, such as choosing to credit one expert opinion over another. *Id*.

Therefore, in both cases, the residual impairment test was determined to be the appropriate test for determining disability, with the difference in the cases being the application of that test to the facts presented in each case. In this case, the issues of whether Burnett's injury is a scheduled member injury or not are largely ones of law, because the facts are undisputed in regard to the nature and location of the injury. Therefore, we need not weigh the evidence and come to our own conclusion, but need only determine whether the trial court came to an incorrect conclusion of law based on the facts presented to it in order to find the error Burnett urges.

The record indicates that in its award, the trial court found that both Dr. Adamson and Dr. Gammel opined that Burnett sustained a 23-percent medical impairment as a result of the total hip arthroplasty. Dr. Adamson, the physician who performed Burnett's surgery, assigned the impairment to Burnett's left hip, and Dr. Gammel assigned the impairment to the lower left extremity. The trial court concluded that Burnett's surgery involved a total hip replacement and qualified as a whole body injury. The evidence clearly indicates that Burnett injured his hip and underwent a total hip replacement, and as such, the injury was not limited to his leg and was not a scheduled member injury pursuant to § 48-121(3). Therefore, we find that the trial court came to the correct conclusion of law that Burnett's injury was to the whole body based upon the facts presented to it.

*Permanent Disability Benefits*.

[5] Burnett also argues that the trial court erred by failing to award him permanent partial disability benefits based upon his contention that his injury was a scheduled member injury and not a whole body injury. Having determined that

the trial court was correct in determining that Burnett's injury was a whole body injury, we need not address this assignment of error. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Holdsworth v. Greenwood Farmers Co-op*, 286 Neb. 49, 835 N.W.2d 30 (2013).

*Cross-Appeal: Expert Medical Opinion*.

On cross-appeal, Tyson argues that the trial court erred by relying upon the opinion of Dr. Gammel that Burnett's June 11, 2010, injury was an aggravation of his preexisting hip condition. We note for purposes of completeness in our review of this cross-appeal that at trial, Tyson did not raise any objections to the admission of Dr. Gammel's opinion.

[6,7] When there is a conflict in testimony of expert witnesses, the trial court is entitled to accept the opinion of one expert over another. As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony. See *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002).

There is sufficient evidence to support the trial court's adoption of Dr. Gammel's opinion. The record indicates that Burnett's treating physician, Dr. Adamson, gave differing opinions as to Burnett's injury. In one opinion, Dr. Adamson indicated that Burnett's fall aggravated his hip pain, and in another, Dr. Adamson opined that the hip pain would have been worse with or without the injury. Dr. Adamson then later opined that any aggravation to the hip was only temporary and that Burnett "returned to baseline" shortly after the accident. The record before this court clearly indicates that Dr. Adamson's various opinions are in conflict with each other, whereas Dr. Gammel's opinions remained consistent that Burnett's injury aggravated his preexisting condition and required surgery.

Furthermore, we disagree with Tyson's assertion that the mere fact that Dr. Gammel was not Burnett's treating physician diminishes any weight which could be given to his opinion, because it is clear that Dr. Gammel had access to and reviewed all of Burnett's medical records and history. In

light of this record and the deference given to the trial court, we cannot say that the compensation court erred in relying upon Dr. Gammel's opinion. This assignment of error is without merit.

*Cross-Appeal: Aggravation.*

Implicit in Tyson's argument that the trial court erred in relying upon the opinion of Dr. Gammel, is Tyson's contention that the injury to Burnett's hip was not an aggravation of a preexisting condition. Instead, Tyson argues that because of the advanced degenerative condition of Burnett's hip joint, the injury sustained on June 11, 2010, was only temporary.

[8,9] The determination of causation is, ordinarily, a matter for the trier of fact. *Vega v. Iowa Beef Processors*, 270 Neb. 255, 699 N.W.2d 407 (2005). In testing the sufficiency of the evidence to support the findings of fact made by the Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party. *Sherwood v. Gooch Milling & Elevator Co.*, 235 Neb. 26, 453 N.W.2d 461 (1990).

The record before us indicates that in the early 1980's, Burnett underwent a hip surgery, after which, Burnett testified, he suffered virtually no further pain until the June 11, 2010, accident. The medical records indicate that subsequent to that surgery, Burnett developed degenerative joint disease in the hip in which he underwent surgery. Dr. Gammel opined that there was a clear change in Burnett's condition which persisted after the June 11 accident. As indicated above, we will not substitute our judgment for that of the compensation court, and, as such, we find that the trial court did not err in determining that Burnett's June 11 accident aggravated his preexisting hip condition.

## CONCLUSION

In sum, we find that the trial court did not err in its determinations, and we affirm the order of the court in its entirety.

AFFIRMED.