DEANN IDEEN, APPELLANT, V.
AMERICAN SIGNATURE GRAPHICS, APPELLEE.

595 N.W. 2d 233

Filed June 4, 1999.    No. S-98-906.

Gordon Peterson, of Orton, Thomas, Peterson and O'Connell, for appellant.

Paul F. Prentiss and Michael F. Polk, of Timmermier, Gross and Prentiss, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, MCCORMACK, and MILLER-LERMAN, JJ.

MCCORMACK, J.

This case arises from a Workers' Compensation Court action in which Deann Ideen alleged injuries suffered through her employment at American Signature Graphics (AmSig). The parties stipulated that Ideen had permanent impairment to her right arm, but Ideen also alleged permanent damage to the muscles of the right shoulder and the thoracic and cervical spine. The compensation court found no whole body injury and awarded damages to Ideen solely for the permanent right-arm impairment. A compensation court review panel upheld this finding as not clearly wrong. We removed this case to our docket under our inherent authority to regulate the caseloads of this court and the Nebraska Court of Appeals. We affirm.

## BACKGROUND

The parties stipulated that Ideen was injured within the course and scope of her employment with AmSig. The injury arose from the repetitive motions required to feed paper and forms into a printing machine. Ideen's initial treatment was at the Bryan Memorial Hospital emergency room in May 1994, with initial follow-up by Dr. William H. Fulcher of Lincoln Bone & Joint Clinic.

In June 1994, at the request of AmSig's insurer, Ideen agreed to see Dr. Jack A. McCarthy, an orthopedic doctor in Omaha. There were apparently inconsistencies between the treatments recommended by McCarthy and Fulcher, and eventually Fulcher recommended that McCarthy become primarily responsible for the treatment of Ideen's injury. In 1995, McCarthy determined that Ideen had reached maximum medical improvement and

rated her with a 12-percent permanent partial impairment to the upper right arm.

When Ideen continued to experience neck and back pain associated with the injury, she sought further care from Fulcher. Fulcher had retired, however, and referred Ideen to Dr. Daniel Noble at Lincoln Orthopedic and Sports Medicine Clinic. Noble was the last treating doctor to see Ideen for this injury. Noble's records indicate that as of November 1997, Ideen's chief complaint was thoracic back pain, and that Noble made a diagnosis of "[c]hronic cervical and thoracic back pain without objective findings and normal MRI."

When Ideen's attorney requested that Noble rate Ideen's disability for the purposes of this workers' compensation action, counsel was informed that Noble did not do such ratings. Ideen's attorney then located a doctor who would do such a rating, Dr. D.M. Gammel of Omaha. Gammel examined Ideen and concurred with McCarthy that Ideen had a 12-percent impairment to the upper right arm. In addition, Gammel assigned a 5-percent permanent impairment to Ideen's cervical spine, stating, "Her cervical decreased range of motion and myofascitis is the result of her cumulative trauma injury and is chronic in nature." Combining the two ratings, Gammel assigned a 12-percent disability to Ideen's person as a whole.

Ideen was the only witness to testify at trial. Ideen testified that she continued to experience a burning sensation between her shoulder blades, headaches, and tightness in the right side of her neck. The compensation court received as evidence Ideen's medical records from the multiple doctors who had treated her for this injury, as well as several letters from McCarthy explaining his reasons for limiting his disability rating to the arm and deposition testimony from Noble and Gammel.

The compensation court found that Ideen had a permanent partial impairment to her right arm, stating that it had "carefully considered the extensive medical records in this case and finds as trier of fact, the opinion of Dr. McCarthy ascribing a permanent partial disability of the right arm to be the most persuasive." The review panel found that the compensation court's decision was not clearly wrong, and it accordingly upheld the decision.

## ASSIGNMENTS OF ERROR

Ideen assigns that the compensation court erred in (1) failing to find that Ideen sustained a permanent injury to her thoracic and/or cervical spine and (2) failing to award Ideen a reasonable amount for loss of earning capacity.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 1998), an appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *McBee v. Goodyear Tire & Rubber Co.*, 255 Neb. 903, 587 N.W.2d 687 (1999); *U S West Communications v. Taborski*, 253 Neb. 770, 572 N.W.2d 81 (1998); *Cunningham v. Leisure Inn*, 253 Neb. 741, 573 N.W.2d 412 (1998).

In determining whether to affirm, modify, reverse, or set aside the judgment of the review panel, the higher appellate court reviews the findings of the single judge who conducted the original hearing. *Jorn v. Pigs Unlimited, Inc.*, 255 Neb. 876, 587 N.W.2d 558 (1998); *Cunningham v. Leisure Inn, supra.*

Findings of fact made by a compensation court trial judge are not to be disturbed upon appeal to a review panel unless they are clearly wrong, and if the record contains evidence to substantiate the factual conclusions reached by the trial judge, the review panel shall not substitute its view of the facts for that of the trial judge. *Pearson v. Lincoln Telephone Co.*, 2 Neb. App. 703, 513 N.W.2d 361 (1994).

## ANALYSIS

Ideen contends that she is entitled to compensation for an injury to the body as a whole rather than for the partial loss of the use of a scheduled member, her right arm. The test for determining whether a disability is to a scheduled member or to the body as a whole is the location of the residual impairment, not the situs of the injury. *Snyder v. IBP, inc.*, 235 Neb. 319, 455

N.W.2d 157 (1990); *Nordby v. Gould, Inc.*, 213 Neb. 372, 329 N.W.2d 118 (1983).

A review of the evidence in the case reveals that such evidence would be sufficient to support a finding of either a scheduled member impairment alone or impairment to both the member and to the body as a whole. However, the compensation court is granted a great deal of discretion in determining factual issues, and we cannot say that it was clearly wrong in choosing to credit one expert opinion over another, particularly when the expert with whom the compensation court agreed was Ideen's primary caregiver regarding this injury.

Ideen urges that the residual impairment test should be abandoned because its application gives different results depending on whether the injury is to the upper or lower extremity. In support of this argument, Ideen claims that Nebraska cases invariably hold that shoulder-related injuries result in findings of scheduled member disability. See, *Fenster v. Clark Bros. Sanitation*, 235 Neb. 336, 455 N.W.2d 169 (1990) (rotator cuff tear); *Snyder v. IBP, inc., supra* (right shoulder injury); *Nordby v. Gould, Inc., supra* (rotator cuff and biceps tendon injuries). By contrast, she cites several cases in which leg or hip injuries have resulted in findings of disability to the body as a whole. See, *Scamperino v. Federal Envelope Co.*, 205 Neb. 508, 288 N.W.2d 477 (1980) (fracture of femur); *Jeffers v. Pappas Trucking, Inc.*, 198 Neb. 379, 253 N.W.2d 30 (1977) (injury to ball and socket of hip joint); *Mead v. Missouri Valley Grain, Inc.*, 178 Neb. 553, 134 N.W.2d 243 (1965) (amputation of both feet). Citing physiological similarities between the shoulder joint and the hip joint, Ideen argues that an injury to the shoulder should be classified as an injury to the body as a whole.

We decline Ideen's invitation to either abandon the residual impairment test or embroil this court in comparative anatomy. We believe that the residual impairment test is the appropriate test for determining disability, which is, after all, the source of the compensation sought in these cases. The test itself does not distinguish between leg and arm injuries, and there is no reason why an injury to an arm could not result in residual impairment to the body as a whole if such impairment was determined to exist.

In this case, the compensation court was presented with conflicting evidence as to whether Ideen suffered a disability to the body as a whole in addition to disability to a scheduled member. The compensation court was not clearly erroneous in determining that the evidence limiting Ideen's disability to a scheduled member was more persuasive, and accordingly its finding of fact will not be disturbed on appeal.

## CONCLUSION

We reaffirm our previous holdings establishing that disability is to be determined by the location of the residual impairment rather than the situs of the injury. The compensation court was presented with conflicting evidence over whether Ideen suffered residual impairment to the body as a whole, and its decision to believe one expert over the other and find only a disability to a scheduled member was not clearly erroneous. Because the compensation court is not allowed to award loss of earning capacity damages for a scheduled member disability, Ideen's second assignment of error is without merit.

Ideen has filed a motion for attorney fees pursuant to Neb. Rev. Stat. § 48-125 (Reissue 1998). Since Ideen did not obtain an increase in the amount of the award of the compensation court as affirmed by the review panel, Ideen is not entitled to attorney fees pursuant to § 48-125, and said motion is hereby overruled.

AFFIRMED.

STEPHAN, J., not participating.