IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

DUROS V. DIVERSIFIED ENTERS.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CYNTHIA DUROS, APPELLANT AND CROSS-APPELLEE,
V.
DIVERSIFIED ENTERPRISES, INC., AND DAKOTA TRUCK UNDERWRITERS,
APPELLEES AND CROSS-APPELLANTS.

Filed November 12, 2013.    No. A-13-115.

Appeal from the Workers' Compensation Court: THOMAS E. STINE, Judge. Affirmed.

Holly T. Morris, of Shasteen & Morris, P.C, L.L.O., for appellant.

David A. Dudley and Robert B. Seybert, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellees.

INBODY, Chief Judge, and MOORE and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Cynthia Duros appeals from the decision of the workers' compensation court awarding her medical benefits and temporary total disability benefits from November 12, 2010, through January 12, 2011. In her appeal, Duros argues that the compensation court erred in finding her benefits should cease January 12. Diversified Enterprises, Inc., doing business as Interim Healthcare, and Dakota Truck Underwriters (collectively Interim) cross-appeal. In Interim's cross-appeal, it argues that the compensation court erred in finding Duros suffered a work-related injury. We determine that competent evidence supported the compensation court's findings and therefore affirm.

## BACKGROUND

Duros' compensation claim arose as a result of neck, arm, shoulder, hip, and hand pain she began experiencing sometime during the fall of 2010. During this time, she maintained two

jobs. She worked as a busdriver for special needs children at a public school and as a home health aide for Interim Healthcare. Her job as a busdriver did not require her to perform much physical labor, but she was required to push, pull, and rearrange wheelchair-bound children while they were getting on and off the bus. Duros' job as a home health aide, however, demanded a medium level of physical exertion. Many of Duros' patients were immobile, and her job required her to frequently lift, carry, push, and pull up to 50 pounds, as well as reposition and transfer patients.

Although Duros could not remember exactly when she began experiencing symptoms, she noted that on one occasion, while attempting to position a patient, she had a distinctly painful experience. She did not report the pain immediately because she expected it to subside. The pain persisted into November 2010, however, causing Duros to meet with her supervisor at Interim in order to request time off. At that meeting, Duros explained that she had been experiencing pain for some time. Duros did not point to a specific injury incident, but told her supervisor that she felt like the cumulative effect of pushing and pulling patients was "wearing out" her body.

In response to the meeting, Duros' supervisor referred Duros to Dr. Arthur West for evaluation. Duros told West that she injured herself while transferring a patient and indicated that the injury had occurred about 3 weeks prior to her November 12, 2010, appointment. Based on that history, Dr. West estimated Duros was injured around October 20 and that her injury was caused by her employment with Interim Healthcare.

After conservative treatment failed, Dr. West referred Duros to Dr. James Gill. During Dr. Gill's evaluation, Duros informed him that she suffered an injury while lifting a patient on November 10, 2010. Based on that specific history, Dr. Gill opined that the lifting incident caused her pain, but also diagnosed her with an independent underlying degenerative condition, cervical spondylosis. According to Dr. Gill, cervical spondylosis results from the natural aging process, but injuries can "exacerbate" or cause "symptomatic" problems. Based on Duros' report that she was injured during work on November 10, Dr. Gill concluded that her work injury "exacerbated" her underlying spondylosis and caused her to have symptoms. He also admitted that even if the date was wrong, as long as Duros suffered an injury from a specific event that occurred at work, her symptoms were caused by that work injury.

Dr. Gill treated Duros with an interlaminar epidural in January 2011. The next week, when Dr. Gill followed up, he noted that although Duros was not symptom-free, she had good relief from the injection. He released her to work without restrictions and planned to monitor her symptoms. If symptoms recurred, Dr. Gill planned to proceed with surgery.

Duros' symptoms were worse by her next appointment, February 9, 2011. At that appointment, Dr. Gill noted that the injection helped Duros initially, but "since that time she has had re-exacerbation of her symptoms" and they had returned to their preinjection level. On February 16, Duros contacted Dr. Gill's office and stated that she had new symptoms, including pain in her left hip, right arm, and right shoulder. She attributed those symptoms to her job as a busdriver. Duros contacted Dr. Gill's office on two more occasions in February and March to report pain she again associated with her job as a busdriver. Duros eventually had surgery, which successfully relieved her symptoms.

Following surgery, Duros sought workers' compensation benefits, claiming that she sustained injury in an accident arising out of and in the course of her employment with Interim Healthcare.

At trial, Duros testified that she began experiencing pain in her neck in October 2010. She further testified that on November 10, she was lifting a client and experienced a lot of pain in her neck and down her left arm. The exact date of the alleged injury is conflicting, since she told Dr. Gill she injured herself on November 10 and told Dr. West the injury occurred in October 2010. When questioned as to the accuracy of this date, Duros admitted that if the record showed she reported this injury on November 10, that would be wrong. Evidence was presented that Duros did not work November 10. Her last day of employment with Interim Healthcare was November 9.

Interim's expert, Dr. Charles Taylon, performed an independent evaluation of Duros. He noted that Duros' prior medical records established that she suffered a cervical strain in 2008 with resultant neck pain. He further noted that an MRI report discussed degenerative changes and broad-based disk protrusions. Dr. Taylon stated that the medical records did not disclose a single event where Duros later injured her neck. Based on this history, Dr. Taylon concluded that it was not clear Duros' injury occurred while she was working and that "more likely than not, this was an ongoing continuation of the wear and tear process." As such, Dr. Taylon opined that Duros' need for surgery was "a natural progression of a pre-existing condition rather then [sic] a work related event."

The compensation court determined that Duros suffered a work-related injury, but that her injuries resolved on January 12, 2011, when she was released to work without restrictions. The court found that the symptoms Duros experienced after 2011 were due to an independent event, based upon Dr. Gill's February 9 entry that Duros had a "re-exacerbation of her symptoms." Based on this finding, the trial court awarded Duros temporary disability benefits from November 12, 2010, through January 12, 2011.

This timely appeal followed.

## ASSIGNMENTS OF ERROR

On appeal, condensed and restated, Duros argues that the trial court erred in finding that Duros' work-related injury resolved on January 12, 2011, and in failing to award benefits after that date. On cross-appeal, Interim argues that the trial court erred in finding that Duros suffered a work-related injury and in finding she established a causal link between her alleged work-related injury and her medical condition.

## ANALYSIS

*Finding Duros' Work-Related Injury*
*Resolved by January 12, 2011.*

Duros argues that the compensation court erred in finding her work-related injury resolved by January 12, 2011. In particular, Duros argues that no competent evidence supported the compensation court's interpretation of Dr. Gill's records to mean Duros suffered an intervening event and that Interim failed to present evidence of an intervening event. Because the

compensation court's determination was supported by competent evidence, this assignment of error is without merit.

Under Neb. Rev. Stat. § 48-185 (Cum. Supp. 2012), a judgment of the Workers' Compensation Court may be modified, reversed, or set aside based on the ground that there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award. *Pearson v. Archer-Daniels-Midland Milling Co.*, 285 Neb. 568, 828 N.W.2d 154 (2013). Competent evidence means evidence that tends to establish the fact in issue. *Id.*

In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, an appellate court will not disturb the findings of fact of the trial judge unless clearly wrong. See *id.* In testing the sufficiency of the evidence to support the findings of fact by the Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. *Id.*

The trial court determined that Duros sustained an intervening event that reexacerbated her injuries. It made this factual finding based upon the language of Dr. Gill's February 9, 2011, office notes which referenced a "re-exacerbation" of Duros' symptoms. In its award, the trial court stated:

> Although the [c]ourt makes no finding with respect to what activities may have exacerbated [Duros'] condition and caused her symptoms to reappear, the un-refuted testimony is that [Duros] was no longer working for [Interim Healthcare] after November 9, 2010. Thus, there is no activity between January 5, 2011, and February 9, 2011, that [Duros] was performing for [Interim Healthcare] that could have caused the aggravation and re-exacerbation of her symptoms.

The language of the February 9, 2011, entry supports the trial court's finding of fact that Duros experienced an intervening event. Dr. Gill used the word "exacerbate" many times in his deposition testimony that was offered at trial, and did so in the context of causation. His opinion was that Duros suffered from spondylosis and that the event of November 10, 2010, "exacerbated" it. Therefore, to interpret his February 9, 2011, note that her symptoms were "re-exacerbated" to mean that a separate event occurred, is not clearly wrong. The fact that Duros continued to work as a busdriver and her subsequent complaints later in February of pain which she, herself, attributed to her job as a busdriver, further support the trial court's interpretation of Dr. Gill's entry.

Duros claims that the trial court's interpretation disregards other portions of Dr. Gill's records and deposition testimony. She claims that the February 9, 2011, entry must be read in view of the larger context of Dr. Gill's entire opinion. As stated above, however, Dr. Gill's deposition testimony lends credence to the compensation court's interpretation, given Dr. Gill's previous use of the word "exacerbate." While the February 9 entry could also be read to simply mean a "worsening" of Duros' symptoms, we are required to resolve every potential conflict or inference in favor of the successful party. Under this standard of review, we cannot find that no competent evidence supported the Workers' Compensation Court's finding.

- 4 -

Duros also argues that Interim failed to present evidence of an intervening event. We note that Interim pled an intervening event as a defense in its answer. Based upon the medical evidence outlined above, there was competent evidence in the record that an intervening event occurred even though the compensation court was unable to specifically identify what that event was. We therefore reject this argument.

*Cross Appeal: Work-Related Injury.*

On cross-appeal, Interim argues that the compensation court erred in finding Duros sustained an accident and injury arising in the context of her employment. We disagree.

In Interim's cross-appeal, it relies on Duros' conflicting testimony to argue that the trial court erred in finding Duros sustained a work-related injury. In particular, Interim points out that Duros initially informed her supervisor that she thought her pain was the result of old age and opined that a variety of factors could be causing the pain. Duros' reports of her pain at times conflicted; she proved to be a poor historian. Although we agree that Duros was a poor historian, we must uphold the compensation court's factual determinations if they are supported by competent evidence. *Ideen v. American Signature Graphics*, 257 Neb. 82, 595 N.W.2d 233 (1999). In this case, the compensation court made detailed factual findings about Duros' injury, and those findings are supported by competent evidence.

While making its factual findings, the court took note of Duros' history of conflicting explanations for her injury. Despite her conflicting explanations, the court found her testimony regarding suffering a work-related injury at some point in October 2010 to be credible. Dr. West determined her injury date was around October 20, given the estimates she related to him. The trial court had the discretion to accept Duros' testimony and Dr. West's estimation that she suffered an injury while lifting a patient on October 20. Because the record contained sufficient evidence to show that Duros suffered a work-related injury, this assignment of error by Interim on cross-appeal is without merit.

*Insufficient Causation Evidence.*

In Interim's cross-appeal, it also assigns that the trial court erred as a matter of law in finding that Duros' expert medical opinions were sufficient to establish causation between the alleged injury and her medical condition. Interim argues that neither Dr. West nor Dr. Gill provided sufficient testimony to prove causation. We disagree.

Interim argues that Dr. West's opinion is insufficient to support causation, because he relies on the assumption that Duros was injured lifting a patient sometime around October 20, 2010. Interim says this assumption is incorrect because there was no evidence that Duros was injured then. Duros reported to Dr. West on November 10 that she was injured a few weeks earlier, so it was proper for Dr. West to estimate the date of injury based upon this report. Furthermore, while Dr. Gill's testimony is not completely clear with respect to causation, his testimony supports the compensation court's finding. Dr. Gill explained that Duros had an underlying condition that was exacerbated based on an injury at work. While he carefully explained that his opinion was based on the history given to him by Duros, that she suffered a work-related injury on November 10, the exact date of injury was not the most important part of his analysis. He admitted that his opinion would be unchanged if he were to learn that the injury

occurred on a different date. Because evidence in the record supported the compensation court's decision, this assignment of error by Interim on cross-appeal is without merit.

## CONCLUSION

Because we determine that the trial court's findings of fact were supported by competent evidence, we find no merit to either Duros' assignments of error on appeal or Interim's assignments of error on cross-appeal. Accordingly, we affirm the award of the compensation court.

AFFIRMED.