# IN THE COURT OF APPEALS OF IOWA

No. 20-1635
Filed September 22, 2021


**MASTERBRAND CABINETS, INC., d/b/a OMEGA CABINETRY and ACE AMERICAN INSURANCE COMPANY,**
     Plaintiffs-Appellants,

**vs.**

**CHAD SIMONS,**
     Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Coleman McAllister,

Judge.


        An employer and its insurer appeal the district court's ruling on judicial

review upholding the award of workers' compensation benefits and penalty

benefits to Chad Simons. **AFFIRMED.**


        Patrick J. O'Connell of Lynch Dallas, P.C., Cedar Rapids, for appellants.

        Benjamin R. Roth of Fulton, Martin & Andres, P.C., Waterloo, for appellee.


        Considered by Bower, C.J., and Tabor and Ahlers, JJ.

**BOWER, Chief Judge.**

Masterbrand Cabinets, doing business as Omega Cabinetry, and its insurer, Ace American Insurance Company (collectively Omega), appeal the district court's ruling upholding the award of workers' compensation benefits and penalty benefits to its employee, Chad Simons. Finding no legal error and concluding substantial evidence supports the commissioner's final decision, we affirm.

Simons has worked at Omega since 1997. Omega admits Simons sustained a work-related injury, a ruptured right quadriceps tendon, in November 2015. Simons underwent surgery performed by Dr. Jason Stanford, a physician selected by Omega, on February 5, 2016, and participated in post-surgery physical therapy between February and August 2016. Dr. Stanford discharged Simons from his care on August 22, finding he reached maximum medical improvement (MMI). Simons was awarded permanent partial disability benefits following an arbitration hearing. On intra-agency appeal, the award was affirmed by the workers' compensation commissioner. The district court rejected Omega's claims on judicial review, upholding the commissioner's rulings. Omega appeals.

"When reviewing the decision of the district court's judicial review ruling, we determine if we would reach the same result as the district court in our application of the Iowa Administrative Procedure Act." *Sladek v. Emp. Appeal Bd.*, 939 N.W.2d 632, 637 (Iowa 2020) (citation omitted). When the claimed error is the commissioner's interpretation of law, we review for errors of law. *See Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 518–19 (Iowa 2012) ("If, however, the agency has not been clearly vested with the discretionary authority to interpret the

provision in question, we will substitute our judgment for that of the agency if we conclude the agency made an error of law.").

Omega admits Simons sustained a work-related injury in November 2015. But it contends the tear of the right quadriceps tendon involves only Simons's knee and thigh, entitling him to benefits for a scheduled loss, not an unscheduled disability.[1] Omega's miserly reading of the statute and case law contradicts the principle of the workers' compensation statute, which "was adopted 'for the benefit of the working [person] and should be, within reason, liberally construed.'" *Waldinger Corp. v. Mettler*, 817 N.W.2d 1, 9 (Iowa 2012) (quoting *Barton v Nevada Poultry Co.*, 110 N.W.2d 660, 662 (Iowa 1961)).

"Our statutory 'schedule' of [workers' compensation] benefits sets the amount of compensation for the loss of certain specified body members. These include eyes, ears, fingers, toes, hands, arms, feet and legs." *Lauhoff Grain Co. v. McIntosh*, 395 N.W.2d 834, 835 (Iowa 1986). "[S]ection 85.34(2)(u) provides for benefits in cases of injuries not falling under the schedule." *Id.* This so-called "conceptual tidiness," *see id.* at 840, is less than tidy in practice.

---

[1] *Compare* Iowa Code § 85.34(2)(o) (2015) ("The loss of two-thirds of that part of a leg between the hip joint and the knee joint shall equal the loss of a leg, and the compensation therefor shall be weekly compensation during two hundred twenty weeks."), *with id.* § 85.34(2)(u) ("In all cases of permanent partial disability other than those hereinabove described or referred to in paragraphs "a" through "t" hereof, the compensation shall be paid during the number of weeks in relation to five hundred weeks as the reduction in the employee's earning capacity caused by the disability bears in relation to the earning capacity that the employee possessed when the injury occurred."). Section 85.34 has been amended and renumbered since Simons's injury, and the relevant sections are now numbered as section 85.34(p) (leg) and (v) (unscheduled injury) (2021).

Omega argues Simons's injury is located in his leg and is a scheduled loss as a matter of law. The commissioner, though, considered Simons's impairment,[2] finding Simon's experienced an unscheduled disability. Injury and impairment are not necessarily equivalents. *See id.*

An injury to a scheduled member may have effects extending beyond that member, resulting in permanent impairment of the body as a whole, which may be the basis for a rating of industrial disability. *See id.* at 837 ("'[T]he great majority of modern decisions agree that, if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the scheduled allowance for the lost member is not exclusive.'" (quoting 2 A. Larson, *The Law of Workmens' Compensation* § 58.21, at 10–222 to 10–243 (1979))); *see, e.g., Ideen v. Am. Signature Graphics*, 595 N.W.2d 233, 236 (Neb. 1999) ("The test for determining whether a disability is to a scheduled member or to the body as a whole is the location of the residual impairment, not the situs of the injury.").

> The 'injury' contemplated under the Act, is 'something . . . that acts extraneously to the natural processes of nature, and thereby impairs the health, overcomes, injures, interrupts, or destroys some function of the body, or otherwise damages or injures a part or all of the body.' The disability contemplated by the Act, is 'industrial disability-reduction of earning capacity, and not mere functional disability.'

*Barton*, 110 N.W.2d at 662–63 (citations omitted). Paragraph (u) "sets no limitation which concerns the physical location of the injury causing the disability." *Id.* at 663. On our review, we conclude the commissioner did not err in interpreting the law. *See id.* at 662 (noting a claim on interpretation of the law is reviewed for error).

---

[2] Impairment is "the state or condition of being impaired: diminishment or loss of function or ability." *Impairment*, Merriam-Webster, https://www.merriam-webster.com/dictionary/impairment (last visited Aug. 24, 2021).

In the alternative, Omega maintains there is not substantial evidence to support the commissioner's finding Simons sustained a whole-body injury. "The injury is the producing cause. The disability, which generally determines the extent of compensation payments, is the result of the cause (injury) upon the human body as it bears upon the ability of the injured person to earn wages. Disability is ordinarily a fact question for the commissioner . . . ." *Id.* at 663.

The commissioner's factual findings are upheld on appeal if they are supported by substantial evidence when the record is viewed as a whole. *Evenson v. Winnebago Indus., Inc.*, 881 N.W.2d 360, 366 (Iowa 2016). We consider whether there is substantial evidence to support the findings made by the commissioner, not whether the evidence could support different findings. *Larson Mfg. Co. v. Thorson*, 763 N.W.2d 842, 850 (Iowa 2009).

Omega asserts there is no injury to Simons's hip joint. It also points to the opinion of Dr. Stanford, the surgeon who repaired the right quadriceps tendon. In January 2017, Dr. Stanford provided a letter addressed to Simons releasing him without restriction and providing a whole-person permanent impairment rating of his lower extremity "due to loss of extension strength" and "due to loss of range of motion in extension." But in March 2018, in response to a question from Omega's attorney whether he believed Simons's hip weakness was related to his work injury, Dr. Stanford wrote: "The patient did not complain of hip pain or injury to me during our care. It does appear, according to the information available for my review, that his injury was isolated to his knee including his quadriceps tendon." Omega argues "substantial evidence in the record proves the anatomical situs of

the injury was solely in the leg—i.e. the knee and quadriceps tendon, and not the hip joint."

Omega's assertions go to the weight and credibility of the experts' testimony. The commissioner adopted the deputy's finding that the other doctors' opinions were more convincing than Dr. Stanford's. Three doctors identify impairment of Simons's right hip—loss of flexion, range of motion, and strength—resulting from his torn quadriceps tendon. Dr. Arnold Delbridge treated Simons on one occasion and later conducted an independent medical examination (IME). During the IME, Simons noted experiencing pain in his buttocks going down the leg to his foot at times. Dr. Delbridge opined Simons had loss of range of motion and strength in the right hip caused by the November 15, 2015 work injury. Simons's family doctor agreed with Dr. Delbridge that Simons's quadriceps tear resulted in impairment to his right hip. Dr. Jeffrey Westpheling—Omega's own expert—conducted an IME and determined the weakness in Simons's right hip flexor was related to his November 10, 2015 injury.

The deputy also found these doctor's opinions were supported by Simons's credible testimony at the arbitration hearing that he did not begin experiencing right hip pain until late 2017, he did not seek treatment from Dr. Stanford for hip pain because he was told after reaching maximum medical improvement his leg was as good as it was going to get, and he did not seek treatment for his right hip because it to was "a hassle going through workers' comp just for medical stuff." Simons also testified he now walks differently and is no longer able to squat, run, bicycle, or lift weights. But he continues to work for Omega without restrictions and enjoys that work. He did not want to jeopardize his work by complaining about his hip.

Determinations of credibility and the weight to be given testimony and expert opinions is for the factfinder, here, the commissioner. *See Dunlavey v. Econ. Fire & Cas. Co.*, 526 N.W.2d 845, 853 (Iowa 1995). We conclude substantial evidence supports the commissioner's findings, and we affirm the district court's ruling upholding the commissioner's ruling.

**AFFIRMED.**