Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/01/2022 08:09 AM CST

- 537 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
SIMPSON v. LINCOLN PUBLIC SCHOOLS
Cite as 30 Neb. App. 537

Lynne F. Simpson, appellant, v.
Lincoln Public Schools,
appellee.

___ N.W.2d ___

Filed January 25, 2022.    No. A-21-297.

1. **Workers' Compensation: Appeal and Error.** Pursuant to Neb. Rev.
   Stat. § 48-185 (Reissue 2021), an appellate court may modify, reverse,
   or set aside a Workers' Compensation Court decision only when (1) the
   compensation court acted without or in excess of its powers; (2) the
   judgment, order, or award was procured by fraud; (3) there is not suf-
   ficient competent evidence in the record to warrant the making of the
   order, judgment, or award; or (4) the findings of fact by the compensa-
   tion court do not support the order or award.
2. ____: ____. On appellate review, the factual findings made by the trial
   judge of the Workers' Compensation Court have the effect of a jury ver-
   dict and will not be disturbed unless clearly wrong.
3. **Workers' Compensation: Judgments: Appeal and Error.** In testing
   the sufficiency of the evidence to support the findings of fact in a work-
   ers' compensation case, an appellate court considers the evidence in the
   light most favorable to the successful party, every controverted fact must
   be resolved in favor of the successful party, and the appellate court gives
   the successful party the benefit of every inference reasonably deducible
   from the evidence.
4. **Workers' Compensation.** As the trier of fact, the Workers' Compensation
   Court is the sole judge of the credibility of witnesses and the weight to
   be given their testimony.
5. **Workers' Compensation: Appeal and Error.** Regarding questions of
   law, an appellate court in workers' compensation cases is obligated to
   make its own decisions.
6. **Workers' Compensation.** The test for determining whether a disability
   is to a scheduled member or to the body as a whole is the location of the
   residual impairment, not the situs of the injury.

- 538 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
SIMPSON v. LINCOLN PUBLIC SCHOOLS
Cite as 30 Neb. App. 537

7. \_\_\_\_. The goal of any average income test is to produce an honest approximation of a workers' compensation claimant's probable future earning capacity.

8. **Workers' Compensation: Wages.** The determination of how the average weekly wage of a workers' compensation claimant should be calculated is a question of law.

9. \_\_\_\_: \_\_\_\_. If the payment of wages was intended to be in lieu of compensation, credit for the wages is allowed.

10. \_\_\_\_: \_\_\_\_. If an employee is paid his or her regular wage, although he does no work at all, it is a reasonable inference that the allowance is in lieu of compensation.

Appeal from the Workers' Compensation Court: Thomas E. Stine, Judge. Affirmed.

Joy Shiffermiller, of Shiffermiller Law Office, P.C., L.L.O., for appellant.

Joshua J. Schauer, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., for appellee.

Pirtle, Chief Judge, and Riedmann and Welch, Judges.

Riedmann, Judge.

## INTRODUCTION

Lynne F. Simpson appeals the orders of the Nebraska Workers' Compensation Court that denied her motion for appointment of an independent medical examiner and awarded her benefits for a concussion injury resulting in temporary cognitive deficits along with permanent loss of vision. We affirm the compensation court's orders.

## BACKGROUND

Simpson was employed by Lincoln Public Schools (LPS) from approximately 2009 to April 13, 2018. At the time of the accident, she worked as a special education paraeducator. On August 31, 2017, Simpson was assisting a student, when a heavy steel tray struck her on the right side of her head. Shortly after being struck, Simpson experienced flashing in her vision, nausea, headaches, and feeling "woozy" and

- 539 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
SIMPSON v. LINCOLN PUBLIC SCHOOLS
Cite as 30 Neb. App. 537

intoxicated. Over the following months, Simpson worked with multiple physicians to resolve her issues.

On April 13, 2020, Simpson filed a petition in the compensation court seeking temporary disability benefits, permanent disability benefits, payment of medical expenses, vocational rehabilitation benefits, and waiting-time penalties, attorney fees, and interest.

Prior to trial, Simpson filed a motion for appointment of an independent medical examiner. Following a hearing, the compensation court issued an order overruling Simpson's motion. The compensation court reasoned that "[b]efore appointment of an independent medical examiner, there must be a dispute between the parties, and the dispute must be a medical dispute between two medical experts." The compensation court determined that the expert opinions of Dr. Adam T. Kafka and Dr. Benjamin Biehl did not conflict, but, rather, supplemented each other. Kafka's opinion was that Simpson was able to return to work with no restrictions and that she had reached maximum medical improvement (MMI). Biehl's opinion was that Simpson had reached MMI, that her visual disturbance and word-finding difficulties were proximately caused by her work injury, and that her "restrictions [were] permanent."

The court determined that Kafka did not dispute that Simpson's visual disturbance and word-finding difficulties were related to the work injury; rather, his report did not address difficulties associated with the work injury. Kafka stated that Simpson could return to work with no restrictions, and Biehl's report did not address work restrictions. Although Biehl opined that Simpson had a visual disturbance and word-finding difficulties, he did not address whether they impacted Simpson's ability to return to work. Furthermore, the permanent "restrictions" that Biehl referenced were not defined.

The parties submitted an amended joint pretrial memorandum, wherein they stipulated to the following facts: Simpson was employed by LPS on August 31, 2017; her hourly rate of pay on August 31 was $15.12; Simpson provided timely

- 540 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
SIMPSON v. LINCOLN PUBLIC SCHOOLS
Cite as 30 Neb. App. 537

notice of the accident; and Simpson was terminated from her position on April 13, 2018.

At trial, the following evidence was presented via testimony and submitted exhibits regarding Simpson's injury, treatment, conflicting medical opinions of her recovery, wages, and leave.

Following her work injury on August 31, 2017, Simpson saw an optometrist on September 1 and 5. He diagnosed Simpson with a posterior vitreous detachment in her left eye, and he cleared Simpson to return to work with no restrictions.

Simpson sought treatment with Kafka on September 22, 2017, and Kafka prescribed physical therapy, speech therapy, and neuro-optometry to help with concussion symptoms. Due to the cumulative fatigue, Kafka directed Simpson to take Wednesdays off of work to rest. This 4-day workweek continued through November 1, at which time Kafka cleared her to return to a 5-day workweek. Simpson continued to treat with Kafka, and on December 27, she reported still struggling with vision, balance, and headaches. Kafka discontinued physical therapy because maximum benefit had been reached. On February 21, 2018, Kafka noted Simpson was struggling with her short-term memory, but cleared her to work without restrictions while continuing with the "speech/language therapy and vision therapy."

On May 1, 2018, Kafka noted that Simpson had been discharged from speech/language therapy and was no longer going to vision therapy. Simpson's biggest problem was related to vision, as she "doesn't feel as though her eyes and brain are connecting their signals, so she will see things that aren't there." Kafka noted Simpson was able to return to work with no restrictions and placed her at MMI. The optometrist to whom Kafka referred Simpson completed a vision evaluation on October 5, 2017, diagnosing Simpson with "convergence insufficiency, oculomotor dysfunction of pursuit and saccadic eye movements, intermittent strabismus/exotropia, visual discomfort/asthenopia with previously diagnosed posterior

- 541 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
SIMPSON v. LINCOLN PUBLIC SCHOOLS
Cite as 30 Neb. App. 537

vitreous detachment." He referred her to Dr. Samantha K. Bohl for vision therapy.

After providing vision therapy to Simpson, Bohl stated in a May 2018 letter that it was her opinion that Simpson's vision impairment rating was less than 10 percent. In July 2020, Bohl authored another letter stating Simpson had a 20-percent impairment, based on the "AMA Guide to Permanent Impairment." Bohl clarified in August that her July letter was based upon her impression that she was being asked to provide a rating pursuant to the guide, but that it remained her opinion, based upon her treatment and evaluation, along with the general practice of assigning impairment, that Simpson sustained a permanent impairment rating of less than 10 percent. She explained that her general practice was not to use the guide because it did not take significant factors into consideration.

During the time that Simpson was being treated by Kafka and Bohl, she also saw her family practice physician, Biehl. He has treated Simpson as a patient since January 2014, including for her cognitive issues associated with attention deficit. In connection with her attention deficit, Simpson had reported to Biehl that she had a hard time concentrating and reading to her students.

On April 17, 2018, Biehl first saw Simpson after her workplace accident. Biehl referred Simpson to a neurologist to follow up on any head injury or concussion symptoms. The neurologist ordered an MRI, which yielded normal results. Simpson next saw Biehl approximately 22 months later in February 2020. Biehl noted that Simpson reported having visual issues, including double vision, as well as some irritability and poor memory.

Biehl opined, to a reasonable degree of medical certainty, that Simpson has permanent physical restrictions as a result of her August 31, 2017, work injury, specifically visual disturbances, as well as word-finding or cognitive disabilities. However, Biehl conceded that he would defer to "a doctor who specializes in the area of [traumatic brain injuries who] had

- 542 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
SIMPSON v. LINCOLN PUBLIC SCHOOLS
Cite as 30 Neb. App. 537

addressed restrictions for . . . Simpson relative to the accident at issue."

The LPS claims adjuster testified at trial regarding the calculation of average weekly wage, compensation practices, and Simpson's attendance and leave from work. The adjuster testified that LPS calculated Simpson's average weekly wage for the 26 weeks prior to the injury based upon Simpson's actual wages and determined her average weekly wage was $353.28. The claims adjuster explained that the standard practice of LPS was to not dock any pay or leave for the first 7 days an employee misses time related to a workers' compensation injury or for appointments related to the injury. In reviewing Simpson's absence history from September 1, 2017, through April 6, 2018, the adjuster testified that Simpson was not docked any pay or leave for any absence that corresponded to a medical appointment or doctor's note taking Simpson off work that day. The absence and leave evidence indicated that if Simpson did not have a doctor's note or an appointment, the absence was designated as "took self off."

The compensation court issued its order on March 9, 2021. It found that Simpson had suffered a concussion and vitreous hemorrhage as a result of striking her head at work on August 31, 2017. The concussion symptoms were resolved as of May 1, 2018, the date she reached MMI, and she returned to her baseline cognitive level at that time. The court determined that the nature and extent of Simpson's vision issues were "convergence insufficiency; oculomotor dysfunction of pursuits and saccades; visual discomfort; glare sensitivity; disequilibrium; and, dry eye," resulting in a 9-percent vision loss in her left eye. The compensation court determined that the 9-percent impairment to her vision was a scheduled member loss and not a body as a whole injury.

The court accepted that Simpson's average weekly wage for temporary disability benefits was $353.28, as calculated by the LPS claims adjuster and based upon Simpson's actual weekly wage. It noted that as an educator, Simpson works 9 months

- 543 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
SIMPSON v. LINCOLN PUBLIC SCHOOLS
Cite as 30 Neb. App. 537

during the school year, but receives a monthly paycheck for 12 months. Finally, the compensation court determined that Simpson was not entitled to any additional temporary disability benefits because either Simpson received her regular wages in lieu of compensation on the additional dates requested or they were not days Simpson had taken off work due to doctor's orders or appointments. Simpson timely appealed.

## ASSIGNMENTS OF ERROR

Simpson assigns, restated, that the compensation court erred in finding (1) Simpson's cognitive deficits had resolved and she had returned to her baseline cognitive level, (2) Simpson was not entitled to the appointment of an independent medical examiner, (3) Simpson's vision loss was a scheduled member loss and/or it was limited to 9 percent, (4) Simpson's average weekly wage was $353.28, and (5) Simpson was not entitled to temporary total disability (TTD) benefits.

## STANDARD OF REVIEW

[1] Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 2021), an appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Aboytes-Mosqueda v. LFA Inc.*, 306 Neb. 277, 944 N.W.2d 765 (2020).

[2,3] On appellate review, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.* In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives

- 544 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
SIMPSON v. LINCOLN PUBLIC SCHOOLS
Cite as 30 Neb. App. 537

the successful party the benefit of every inference reasonably deducible from the evidence. *Id.*

[4,5] As the trier of fact, the compensation court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Id.* Regarding questions of law, an appellate court in workers' compensation cases is obligated to make its own decisions. *Mueller v. Lincoln Public Schools*, 282 Neb. 25, 803 N.W.2d 408 (2011).

## ANALYSIS

*Baseline Cognitive Level.*

Simpson assigns that the compensation court erred in finding that her cognitive deficits had resolved themselves by May 1, 2018, and in finding that she had returned to her baseline cognitive level at that time. Simpson argues that the evidence at trial demonstrated that she continues to suffer from the effects of her head injury throughout her treatment and to the present day. We find that the compensation court's determination that Simpson had returned to her preaccident baseline cognitive level was supported by the record and was not clearly erroneous.

In determining that Simpson returned to her baseline cognitive level and that any cognitive deficits related to the work accident resolved by May 1, 2018, the compensation court weighed the opinions of Kafka and Biehl. As the trier of fact, the compensation court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Parks v. Hy-Vee*, 307 Neb. 927, 951 N.W.2d 504 (2020). The court determined that a fair reading of Kafka's records supported its conclusion, and we agree. It was not persuaded by Biehl's opinion that Simpson continues to suffer from postconcussion symptoms as a result of the work accident because Biehl did not provide any significant treatment or care for Simpson's work injury, and Biehl testified that he would defer to the opinions of specialists who treated Simpson relative to the accident at issue.

- 545 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
SIMPSON v. LINCOLN PUBLIC SCHOOLS
Cite as 30 Neb. App. 537

The compensation court found Kafka's opinion more persuasive, and the record supports that factual finding. Kafka treated Simpson regularly for the workplace injury, starting on September 22, 2017, when he prescribed physical therapy, speech therapy, and neuro-optometry to help with her concussion symptoms, and continuing through May 1, 2018, when she reached MMI. On May 1, Kafka noted that Simpson had been discharged from speech and language therapy and that her biggest problems were related to vision. Kafka also noted that the results of a recent MRI of Simpson's brain were normal and that she had made significant improvement through speech and language therapy.

Medical evidence submitted at trial showed that Simpson suffered from cognitive difficulties prior to the work accident, including Biehl's noting that she had a hard time concentrating or reading to her students, along with anxiety and adult attention deficit disorder. The compensation court found that any cognitive deficits related to the work accident were resolved by May 1, 2018, and that Simpson had returned to her baseline cognitive level at that time. This factual finding is supported by the record and is not clearly erroneous.

Additionally, Simpson argues that because she has a body as a whole injury, she is entitled to have her loss of earning power assessed. However, this argument is predicated on a determination that Simpson continues to suffer from cognitive issues related to the work injury, a contention that the compensation court rejected. Because we affirm the compensation court's finding that Simpson's cognitive symptoms returned to baseline, she suffered no permanent body as a whole injury for which a loss of earning power could be awarded. We therefore reject this argument.

*Appointment of Independent Medical Examiner.*

Simpson assigns that the compensation court erred in finding that she was not entitled to the appointment of an independent medical examiner. Simpson argues that Kafka's opinion

- 546 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
SIMPSON v. LINCOLN PUBLIC SCHOOLS
Cite as 30 Neb. App. 537

and Biehl's opinion contradicted one another. Kafka opined that Simpson could return to work without restriction. Biehl opined that the workplace injury caused visual disturbance and word-finding difficulties and that the restrictions were permanent. Therefore, Simpson asserts that an independent medical examiner should have been appointed to render medical findings. We disagree.

At the hearing on the motion to appoint an independent medical examiner, Simpson offered only the reports of Kafka and Biehl and the discharge report of a speech language pathologist. The court determined that the speech language pathologist was not a physician as that term is defined in the Nebraska Workers' Compensation Act, and therefore, it did not consider that record. As to the reports of the two physicians, the court determined that they did not indicate a medical dispute between medical experts existed.

Under Neb. Rev. Stat. § 48-134.01 (Reissue 2021), and the accompanying rules of the compensation court, the compensation court shall assign an independent medical examiner from the list of qualified examiners to render medical findings in any dispute relating to the medical condition of a claimant. The compensation court found that Kafka's and Biehl's opinions supplemented one another and were not in dispute.

As to the offered evidence, none of the reports were narrative; rather, the physicians were requested to answer either yes or no, or provide a short answer to questions submitted to them. Kafka's May 1, 2018, report contained two opinions: Simpson could return to work with no restrictions and she had reached MMI. His November 13 report confirmed that Simpson reached MMI on May 1, that she had been released from vision therapy, and that Kafka did not foresee any future medical care. Biehl's June 17, 2020, report stated that he believed Simpson was at MMI; that she continued to have visual disturbances and word-finding difficulties, which were proximately related to her work injury; and that her restrictions were permanent. It did not identify what those restrictions were.

- 547 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
SIMPSON v. LINCOLN PUBLIC SCHOOLS
Cite as 30 Neb. App. 537

Both physicians agreed that Simpson had reached MMI. Biehl attributed Simpson's visual disturbance and word-finding difficulties to the work injury. Kafka's report did not discuss any difficulties associated with the work injury; therefore, his report does not dispute Biehl's opinion. Biehl opined that Simpson had permanent restrictions, but his report did not identify what those restrictions were, and the court declined to adopt Simpson's argument that her visual disturbance and word-finding difficulties were restrictions, as opposed to symptoms. Therefore, Kafka's opinion that Simpson could return to work with no restrictions was not disputed by Biehl's report, because there was no discussion of how Simpson's visual disturbance and word-finding difficulties would impact her ability to return to work.

We agree with the compensation court's factual finding that the reports did not reveal a medical dispute between two physicians. On appellate review, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Aboytes-Mosqueda v. LFA Inc.*, 306 Neb. 277, 944 N.W.2d 765 (2020). Because there was no medical dispute between medical experts, the court did not err in denying Simpson's request for appointment of an independent medical examiner.

*Vision Loss Was Scheduled Member Loss.*

Simpson assigns that the compensation court erred in finding that her vision loss was a scheduled member loss and/or that her vision impairment was limited to 9 percent. We disagree with both assertions.

Simpson argues that her vision loss was a result of a traumatic brain injury and that the compensation court should have found she suffered a body as a whole injury as opposed to the scheduled member injury to her eye. It appears that Simpson also argues, in the alternative, that if the determination of a scheduled member injury is affirmed, her impairment should have been 20 percent instead of 9 percent. Each argument will be addressed in turn.

- 548 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
SIMPSON v. LINCOLN PUBLIC SCHOOLS
Cite as 30 Neb. App. 537

[6] The compensation court was not clearly erroneous in determining that Simpson's injury was a scheduled member injury as opposed to a body as a whole injury. The test for determining whether a disability is to a scheduled member or to the body as a whole is the location of the residual impairment, not the situs of the injury. *Ideen v. American Signature Graphics*, 257 Neb. 82, 595 N.W.2d 233 (1999). In *Ideen*, the claimant sought review of the compensation court's determination that the claimant did not suffer a whole body injury as to the injury to her right arm. The claimant's treating physician assigned her a 12-percent permanent partial impairment to the upper right arm. *Id*. Another physician agreed with the 12-percent impairment to the upper right arm, in addition to a 5-percent impairment to her spine, and opined that the claimant had a 12-percent impairment to her person as a whole. *Id*. The compensation court found the first physician's opinion to be more persuasive and found that the disability was to the arm only. *Id*. The Nebraska Supreme Court affirmed the compensation court's determination because it was not clearly erroneous. *Id*.

In this case, the compensation court was presented with conflicting evidence as to whether Simpson suffered a disability to the body as a whole or a disability to a scheduled member. As discussed in previous sections, the compensation court weighed the conflicting testimony and found that Kafka's determination that the concussion symptoms had resolved as of May 1, 2018, and Simpson had returned to her preaccident baseline cognitive level more persuasive than Biehl's testimony. As Simpson's vision issues were the remaining issues, the compensation court was correct in finding that Simpson's injury was a scheduled member loss. The compensation court was not clearly erroneous in determining that the evidence limiting Simpson's disability to a scheduled member was more persuasive, and accordingly, its finding of fact will not be disturbed on appeal.

Additionally, in addressing the secondary argument that the scheduled member loss should have been 20 percent, we

- 549 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
SIMPSON v. LINCOLN PUBLIC SCHOOLS
Cite as 30 Neb. App. 537

again defer to the factual finding of the compensation court. Simpson argues that the compensation court should have decided her vision impairment is 20 percent. The record supports the 9-percent impairment decision because Bohl, who had been conducting vision therapy with Simpson, stated it was her opinion that Simpson's impairment rating was less than 10 percent in May 2018. Simpson's argument is based on a July 2020 letter wherein Bohl stated Simpson had a 20-percent impairment based on the "AMA Guide to Permanent Impairment." But in August, Bohl clarified the reason for the increased impairment rating and reiterated that based upon her treatment and evaluation, along with the general practice of assigning impairment, it was her opinion that Simpson sustained a permanent impairment rating of less than 10 percent. The compensation court's reliance upon Bohl's rating of less than 10 percent was not clearly erroneous.

*Calculation of Average Weekly Wage.*

Simpson assigns that the compensation court erred in finding that her average weekly wage was $353.28 for purposes of calculating temporary disability benefits. We disagree.

[7,8] Simpson argues the average weekly wage should have been calculated by multiplying the stipulated hourly rate of $15.12 by 40 hours a week for a total of $604.80. Simpson cites *Mueller v. Lincoln Public Schools*, 282 Neb. 25, 803 N.W.2d 408 (2011), in support of her argument. The goal of any average income test is to produce an honest approximation of the claimant's probable future earning capacity. *Id.* The determination of how the average weekly wage of a workers' compensation claimant should be calculated is a question of law. *Id*.

In workers' compensation cases, the amount of benefits awarded to a claimant is dependent upon the court's calculation of the claimant's average weekly wage. *Id*. For employees who are paid by the hour, the average weekly wage is determined pursuant to Neb. Rev. Stat. §§ 48-121 and 48-126 (Reissue 2021). See *Mueller v. Lincoln Public Schools, supra*.

- 550 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
SIMPSON v. LINCOLN PUBLIC SCHOOLS
Cite as 30 Neb. App. 537

Section 48-126 provides in relevant part that "wages" mean "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident." In continuous employment, if immediately before the accident the claimant's rate of wages was fixed by the hour, the claimant's weekly wage is "his or her average weekly income for the period of time ordinarily constituting his or her week's work, and using as the basis of calculation his or her earnings during as much of the preceding six months as he or she worked for the same employer." § 48-126. As a general rule, the weekly wage of a worker compensated on an hourly basis is a simple function of the hourly rate multiplied by the number of hours worked in a given week. *Mueller v. Lincoln Public Schools, supra.* The formula is not inflexible, and precludes an automatic mathematical calculation based on the past 6 months' work. See *id*.

In *Mueller*, a school employee worked 9 months a year, approximately 37½ hours per week, but was paid monthly over a 12-month period. To determine the employee's average weekly wage for TTD purposes, the compensation court multiplied the stipulated hourly wage times 37½ hours per week. *Id*. The Supreme Court found that the compensation court erred in calculating the employee's average weekly wage without accounting for the fact that her hourly wages did not, if simply multiplied by 40 hours a week, approximate her actual weekly wages. *Id*. The Supreme Court held that "[u]nder these circumstances, the trial court erred in not calculating [the employee's] average weekly wage, for temporary disability purposes, based upon her *actual weekly income*." *Id.* at 31, 803 N.W.2d at 412 (emphasis in original).

In the instant case, the unrebutted evidence adduced at trial was that Simpson's average weekly income, based upon her actual weekly income over the prior 26 weeks, was $353.28. On appeal, Simpson proposes that the average weekly wage calculation of the stipulated hourly rate of $15.12 times 40 hours a week for a total of $604.80 is the best indication of

- 551 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
SIMPSON v. LINCOLN PUBLIC SCHOOLS
Cite as 30 Neb. App. 537

her earning capacity. But that is the formula that the Supreme Court expressly rejected for a similarly situated employee in *Mueller*, because it had the effect of distorting the employee's average weekly wage well beyond what she was actually earning at the time of her injury. We reject Simpson's proposal for the same reason.

Based on *Mueller v. Lincoln Public Schools*, 282 Neb. 25, 803 N.W.2d 408 (2011), we find no error in the compensation court's calculating Simpson's average weekly wage, for temporary disability purposes, based upon her actual weekly income. Doing so supports a determination that Simpson's average weekly wage for purposes of awarding temporary disability was $353.28.

*Not Entitled to TTD Benefits.*

Simpson assigns that the compensation court erred in finding that she was not entitled to TTD benefits. The parties asked the compensation court to make a determination of Simpson's entitlement, if any, to TTD benefits. After reviewing the medical records and evidence, the compensation court found that Simpson was not entitled to any TTD benefits as claimed in exhibit 40, because LPS continued to pay Simpson her regular wages when missing work due to doctor's orders or appointments. Simpson argues that LPS should not receive credit for "no docking" her pay when she was absent from work, brief for appellant at 39, relying on *Anderson v. Cowger*, 158 Neb. 772, 65 N.W.2d 51 (1954) and *Godsey v. Casey's General Stores*, 15 Neb. App. 854, 738 N.W.2d 863 (2007). The compensation court's finding that Simpson was not entitled to any temporary disability benefits is not clearly erroneous, and therefore, we affirm.

[9,10] In *Anderson v. Cowger, supra*, the Supreme Court confronted the issue of whether the employer should be given credit against the award of indemnity benefits for the regular wages it had continued to pay the employee. The court held that if the payment of wages was intended to be in lieu of

- 552 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
SIMPSON v. LINCOLN PUBLIC SCHOOLS
Cite as 30 Neb. App. 537

compensation, credit for the wages is allowed. *Id*. The court further held that if an employee is paid his or her regular wage although he or she does no work at all, it is a reasonable inference that the allowance is in lieu of compensation. *Id.* In *Godsey v. Casey's General Stores, supra*, this court further clarified that an employer is not entitled to credit for wages paid, if those wages were paid as a result of the employee's using accumulated medical or vacation leave.

The compensation court's determination that LPS should receive credit for wages paid in lieu of compensation is not clearly erroneous. As described in *Anderson v. Cowger, supra*, if an employee is paid his or her regular wage although he or she does no work at all, it is a reasonable inference that the allowance is in lieu of compensation. Simpson received her regular wage when she was not at work due to the workplace injury, as supported by the testimony of the LPS claims adjuster and the medical records submitted by the parties. Simpson was paid her regular wages and was not forced to use accrued vacation or sick time to attend doctor or therapy visits. LPS is entitled to credit for the payments made to Simpson as her regular wages in lieu of workers' compensation benefits. The compensation court's determination that Simpson is not entitled to any additional TTD benefits is not clearly erroneous, and we affirm.

## CONCLUSION

For the foregoing reasons, we affirm the orders of the compensation court.

AFFIRMED.